UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
VICINAGE OF TRENTON

|  |  |  |
|---|---|---|
| SHAWN WILMOTH, TRENTON POOL, SIGNATURE MASTERS, INC., AND BENZET CONSULTING, LLC. | ) ) ) ) | HON. PETER SHERIDAN, U.S.D.J |
| Plaintiffs, | ) ) ) | Civil Action |
| v. | ) ) | No.: 3:16-CV-01854-PGS-DEA |
| KIM GUADAGNO, IN HER OFFICIAL CAPACITY AS, LT. GOVERNOR & SECRETARY OF STATE OF NEW JERSEY, | ) ) ) ) ) ) | |
| Defendant. | ) ) | *(Filed Electronically)* |

BRIEF IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS COMPLAINT
PURSUANT TO FED. R. Civ. P. 12 (b) 6

CHRISTOPER S. PORRINO
ACTING ATTORNEY GENERAL OF NEW JERSEY
Richard J. Hughes
Justice Complex
P.O. Box 112
Trenton, New Jersey 08625
Alan.Stephens@lps.state.nj.us
(609) 292-6123
Attorney for Defendant

Alan C. Stephens– ID# 013941985
Deputy Attorney General
   On the Brief

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

PRELIMINARY STATEMENT...........................................  1

PROCEDURAL HISTORY AND STATEMENT OF FACTS......................  2

ARGUMENT......................................................4

    <u>POINT A.</u>

        Political Party Association.......................... 5

    <u>POINT B.</u>

        Residency Requirement............................... 17

    <u>POINT C.</u>

        The Statute As Applied............................. 19

            (i)  Wilmoth and Signature Masters, Inc........ 19
            (ii) Pool and Benezet, LLC..................... 24

CONCLUSION...................................................26

## TABLE OF AUTHORITIES

### FEDERAL CASES

PAGE

Buckley v. American Constitutional Law Foundation, Inc.,
  525 U.S. 182 (1999) ............................. 15, 17, 20, 24

Burdick v. Takushi,
  504 U.S. 428 (1992) .................................... 4, 5, 9

Cal. Democratic Party v. Jones,
  530 U.S. 567 (2000) ................... 8, 9, 23, 24, 25, 26, 27

Davis v. Bandemer,
  478 U.S. 109 (1986) (O'Connor, J., concurring) ............. 11

Democratic Party of U.S. v. Wisconsin ex rel. La Follette,
  450 U.S. 107 (1981) ............................... 7, 8, 16, 22

Duke v. Cleland,
  954 F.2d 1526 (11th Cir. 1992) ........................ 10, 13

Eu v. S.F. Cnty. Democratic Cent. Comm.,
  489 U.S. 214 (1989) ......................................... 8

Krislov v. Rednour,
  226 F.3d 851 (7th Cir. 2000) ............................... 17

Lerman v. Bd. of Elections of New York City,
  232 F.3d 135 (2d Cir. 2000) ................. 17, 20, 21, 23, 26

Maslow v. Bd. of Elections in N.Y.C.,
  658 F.3d 291 (2d Cir. 2011), cert. den.
  564 U.S. (2012) ................................ 10, 14, 20, 21

Meyer v. Grant,
  486 U.S. 414 (1988) .................................... 15, 24

Nader v. Schaffer,
  417 F. Supp. 837 (D. Conn. 1976) (three-judge panel),
  summarily aff'd, 429 U.S. 989, (1976) ................. 9, 12, 16

New York State Board of Elections v. Lopez Torres,
  552 U.S. 196 (2008).......................... 8, 23, 26, 27

Ray v. Blair,
  343 U.S. 214 (1952) ........................................ 12

Rosario v. Rockefeller,
  410 U.S. 752 (1973) .. 9, 12, 13, 15, 19, 22, 23. 24. 25. 26. 27

Tashjian v. Republican Party of Conn.,
  479 U.S. 208 (1986) ...................... 8, 9, 10, 11, 24, 25

Timmons v. Twin Cities Area New Party,
  520 U.S. 351 (1997) .................. 4, 8, 11, 16, 19, 26, 27

Wash. State Grange v. Wash. State Republican Party,
  552 U.S. 442 (2008) (Scalia, J., dissenting) ................ 8

Williams v. Rhodes,
  393 U.S. 4 (1968) ........................................... 8

Wilmoth v. Merrill,
  2016 U.S. Dist. LEXIS 26134
  (D. Conn. March 1, 2016) ........................... 20, 21, 23

## FEDERAL STATUTES

                                              **PAGE**

42 U.S.C. § 1983 ...........................................2

Tex. Elec. Code §§1.005(24), 191.004(b)....................... 25

## FEDERAL   RULES

                                              **PAGE**

Fed. R. Civ. P. 12(b)(6)...................................... 3

## STATE CASES

                                              **PAGE**

Lesniak v. Budzash,
  133 N.J. 1 (1993) ....................................... 8, 10

N.J. Conservative Party v. Farmer,
  324 N.J. Super. 451 (App. Div. 1999) ...................... 5

Rogers v. State Committee of Republican Party,
  96 N.J. Super. 265 (L. Div. 1967) .......................... 5

Smith v. Penta,
  81 N.J. 65 (1979); appeal dismissed
  444 U.S. 986 (1979) ..................... 6, 10, 11, 12, 16, 26

## STATE STATUTES

                                                                    **PAGE**

Assembly Floor Amendment Statement,
  Assembly No. 3629, L. 2014, c.83, (December 31, 2014) .... 7, 18

N.J. Stat. Ann. § 19:23-11
  ................. 1, 2, 4, 6, 7, 16, 17, 18, 19, 20, 21, 22, 27

N.J. Stat. Ann. § 19:23-45......................... 3, 6, 10, 12

N.J. Stat. Ann. § 19:23-5..................................... 5

N.J. Stat. Ann. § 19:23-7..................................... 6

N.J. Stat. Ann. § 19:31-31.................................... 3

N.J. Stat. Ann. § 19:31-31a, b(3)............................. 3

N.J. Stat. Ann. § 19:31-31c(1),(2)(11).................... 3, 22

N.J. Stat. Ann. § 19:5-1.................................. 3, 5

N.J.S.A. 19:23-11........................................... 26

**PRELIMINARY STATEMENT**

The Supreme Court has recognized that a strong and stable two-party political system in this country ensures political stability and contributes enormously to sound and effective government. Indeed the federal courts have consistently held that the First Amendment affords political parties an autonomy that encompasses the right to exclude non-members from party functions, including the right to select its nominees, and that a political party's associational right to exclude forecloses the possibility that non-party members have an independent First Amendment right to participate in party affairs. Additionally, the courts have held that statewide residency and voter registration requirements for circulators of political party nominating petitions—a critical phase of a party's candidate selection process--are constitutional.

Therefore, <u>N.J. Stat. Ann.</u> § 19:23-11, which requires primary election candidate nomination petition circulators to be registered voters in the State of New Jersey and members of the political party for which they are petitioning, is not a violation of the First Amendment. Rather, the statute is the state's expression of a valid and important regulatory interest in a fair two-party system.

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

Plaintiffs Shawn Wilmoth, Trenton Pool, Signature Masters, Inc., and Benezet Consulting LLC are "professional circulators" in the business of gathering signatures on petitions nominating candidates for election to public offices. Civil Action No. 3:16-cv-01854, Docket Entry No. 1, Pls. Compl. at ¶¶ 3, 7, 9, 10, 12.  They have initiated this 42 U.S.C. § 1983 action to prohibit defendant Kimberly Guadagno, New Jersey's Secretary of State and chief election official, from enforcing N.J. Stat. Ann. § 19:23-11, which states: "[t]he person who signs the petition shall be a registered voter in this State whose party affiliation is of the same political party named in the petition." Complaint ¶¶ 1-3. Plaintiffs claim that the voter registration and party affiliation requirements of N.J. Stat. Ann. § 19:23-11 violate the First Amendment of the United States Constitution, both facially and as-applied. Complaint, ¶¶ 14-20. Plaintiffs ask the court to enter judgment declaring N.J. Stat. Ann. § 19:23-11 unconstitutional and enjoining its enforcement. Complaint, ¶¶ 20-22.[1]

New Jersey's political party organizational scheme consists of governing bodies comprised of elected members of the State, County and Municipal Committees, each with its own set of by-

---

[1] Plaintiffs are not seeking monetary damages.

laws. N.J. Stat. Ann. §  19:5-2 to -6. New Jersey conducts closed primaries for all elections, which means in order to vote in a party, the person must be a registered voter and a member of that party. N.J. Stat. Ann. § 19:23-45. As of this date, the only political parties in New Jersey which have primary elections are the "Democratic" and "Republican" parties. See N.J. Stat. Ann. § 19:5-1

In New Jersey once a person registers to vote and declares his or her party affiliation, the voter's information is entered into a Statewide Voter Registration System (SVRS). The SVRS is the "official State repository for voter registration information for every legally registered voter in this State." N.J. Stat. Ann. § 19:31-31. Such information includes, among other things, a voter's name, address and political party affiliation, where one is designated. N.J. Stat. Ann. § 19:31-31c(1),(2)(11). The SVRS is accessible to executive departments and state agencies designated by the Secretary of State, and to each county commissioner of voter registration, county boards of election, county clerks and municipal clerks. N.J. Stat. Ann. § 19:31-31a, b(3). The SVRS thus serves as a verifiable public record of every registered voter in New Jersey who has declared a political party affiliation.

This motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) follows because it is constitutionally permissible to

require circulators of primary party petitions to be registered voters of New Jersey and members of the same political party as the candidate named in the petition.

## ARGUMENT

**N.J. STAT. ANN.** § **19:23-11, WHICH REQUIRES CIRCULATORS OF NOMINATING PETITIONS FOR PRIMARY ELECTIONS TO BE REGISTERED VOTERS IN NEW JERSEY AND MEMBERS OF THE SAME POLITICAL PARTY NAMED IN THE PETITION, IS CONSTITUTIONAL BECAUSE IT SERVES IMPORTANT STATE REGULATORY INTERESTS AND DOES NOT IMPERMISSIBLY BURDEN ANY ASSOCIATIONAL RIGHT OR FREEDOM OF EXPRESSION OF PLAINTIFFS.**

The First and Fourteenth Amendments of the United States Constitution do not guarantee the named plaintiffs the right to circulate petitions in a New Jersey primary election on behalf of a political party when none of the plaintiffs are registered voters of the State of New Jersey and members of the political party named in the petition.

The Supreme Court has enunciated a test to be applied when election laws are subjected to challenge on First Amendment grounds. Courts hearing such claims must "weigh the character and magnitude of the burden the State rule imposes on [First Amendment] rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary." Timmons v. Twin Cities Area New Party, 520 U.S. 351, 357-58 (1997); Burdick v. Takushi, 504 U.S. 428, 434 (1992). (internal quotation marks

omitted).  "Regulations  imposing  severe  burdens  on  plaintiffs'
rights  must  be  narrowly  tailored  and  advance  a  compelling  state
interest.  Lesser  burdens,  however,  trigger  less  exacting  review,
and  a  State's  important  regulatory  interests  will  usually  be
enough  to  justify  reasonable,  nondiscriminatory  restrictions."
Ibid.  (quotation  marks  omitted); Burdick v. Takushi, supra.

### A. Political Party Association

In  general  terms,  "[a]  'political  party'  is  an  association
of  persons  sponsoring  ideas  of  government  or  maintaining  certain
political  principles  or  beliefs  in  public  policies  of
government,  and  its  purpose  is  to  urge  adoption  and  execution  of
such  principles  in  governmental  affairs  through  officers  of  like
beliefs." N.J. Conservative Party v. Farmer, 324 N.J. Super.
451,  460  (App.  Div.  1999); Rogers v. State Committee of
Republican Party, 96 N.J. Super. 265, 271 (L. Div. 1967). "A
political  party  makes  its  own  rules  and  regulations  and
determines  its  own  policies." Rogers, supra.

In  New  Jersey,  there  are  two  recognized  political  parties:
the  Republican  Party  and  the  Democratic  Party.  A  political  party
is  entitled  to  hold  a  primary  election. N.J. Stat. Ann. § 19:5-
1.  "Candidates  to  be  voted  for  at  the  primary  election  for  the
general  election  shall  be  nominated  exclusively  by  members  of
the  same  political  party  by  petition..." N.J. Stat. Ann.

§ 19:23-5. N.J. Stat. Ann. § 19:23-11 governs petition circulation in partisan primary elections.

N.J. Stat. Ann. § 19:23-11 provides in part that "[t]he person who circulates the petition shall be a registered voter in this State whose party affiliation is of the same political party named in the petition." The purpose for the requirement that a circulator of a party petition be a member of the same political party is to protect the constitutional right of members of political parties to associate with like-minded candidates. Smith v. Penta, 81 N.J. 65, 77-78 (1979); appeal dismissed 444 U.S. 986 (1979). The provision accomplishes this goal by requiring a circulator of a petition in a partisan primary election to be a member of the applicable political party. N.J. Stat. Ann. § 19:23-7.

In New Jersey, for voting purposes, political party membership is established in one of three ways: a voter's registering to vote as a member of a political party; switching his or her party affiliation by declaring a new party affiliation at least fifty-five days prior to a primary election, or by voting for the first time in a primary election. N.J. Stat. Ann. § 19:23-45. This statutory mechanism provides an established, verifiable method by which party membership is identified for the purposes of participation in partisan primaries. Notably, when amending N.J. Stat. Ann. § 19:23-11,

6

the New Jersey Legislature declared that the provision is a "legitimate way of verifying that the person who circulates a partisan primary petition is a member of the political party named in that petition." Assembly Floor Amendment Statement, Assembly No. 3629, L. 2014, c.83, (December 31, 2014).  To that end, the Statewide Voter Registration System (SVRS), serves as a verifiable public record of every registered voter in New Jersey who has declared a political party affiliation. Once a political party petition is filed, the SVRS can immediately determine whether a New Jersey registered voter seeking to circulate a primary election petition is a member of the same political party as the candidate named in the petition.[2]

Political party associations enjoy First Amendment protection, which "necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only." See Democratic Party of U.S. v. Wisconsin ex rel. La Follette, 450 U.S. 107, 112 (1981). In that regard, election laws governing partisan primaries, and the party affiliation requirement of N.J. Stat. Ann. § 19:23-11, are necessary to preserve the associational rights of the parties and protect the system.

---

[2]   There is no known nationwide network accessible by election officials within this State to verify the political party status of a potential circulator who resides out of State.

Many years ago, the Supreme Court opined that in restricting participation in a party's candidate-selector process is an individual voter's right to associate with the political party of his or her choice. Williams v. Rhodes, 393 U.S. 4, 10 (1968). The New Jersey Supreme Court opined that "the [n]ominating petition and the primary election are the central events in a party's selection of a candidate." Lesniak v. Budzash, 133 N.J. 1, 10 (1993). "If a party's candidate-selection process is to perform its lawful and intended function of providing legitimate candidates for the general election, it must be kept free from fraud and manipulation in the signing of nomination petitions." Ibid.

The United States Supreme Court has emphasized--with increasing firmness--that the First Amendment guarantees a political party great leeway in governing its own affairs. New York State Board of Elections v. Lopez Torres, 552 U.S. 196, 202-03 (2008); Cal. Democratic Party v. Jones, 530 U.S. 567, 574-75, (2000); Timmons, supra, at 358; Eu v. S.F. Cnty. Democratic Cent. Comm., 489 U.S. 214, 224 (1989); Tashjian v. Republican Party of Conn., 479 U.S. 208, 216 n.6 (1986); Democratic Party of U.S. v. Wisconsin ex rel. La Follette, supra, 450 U.S. 122; see also Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 462-63 (2008) (Scalia, J., dissenting). The First Amendment affords political parties an

autonomy that encompasses the right to exclude non-members from party functions, and "[i]n no area is the political association's right to exclude more important than in the process of selecting its nominee." Cal. Democratic Party v. Jones, supra, 530 U.S. at 575.

All election laws impose at least some burden on the expressive and associational rights protected by the First Amendment. Burdick v. Takushi, supra, 504 U.S. at 433. In that regard, a political party's associational right to exclude forecloses the possibility that non-party members have an independent First Amendment right to participate in party affairs. Cal. Democratic Party v. Jones, supra, 530 U.S. at 583-84. (citing Tashjian v. Republican Party of Conn., supra, 479 U.S. at 216); see also Rosario v. Rockefeller, 410 U.S. 752, 758 (1973); Nader v. Schaffer, 417 F. Supp. 837, 847 (D. Conn. 1976) (three-judge panel), summarily aff'd, 429 U.S. 989, (1976). Specifically, the Supreme Court has stated: "As for the associational 'interest' in selecting the candidate of a group to which one does not belong, that falls far short of a constitutional right, if indeed it can even fairly be characterized as an interest." Cal. Democratic Party v. Jones, supra, 530 U.S. at 573, n.5. In Cal. Democratic Party, the Supreme Court invalidated, on First Amendment grounds, a California law that created a blanket primary, reasoning that

that it permitted non-party members to determine the candidate bearing the Democratic party's standard in the general election. Id. at 577.

As noted, New Jersey conducts closed primaries, restricting the selection of political party candidates to the members of the same party. N.J. Stat. Ann. § 19:23-45. Closed primary systems and the right of political parties to exclude people from membership have repeatedly been held constitutional in cases throughout the country. See, e.g. Tashjian v. Republican Party of Conn., supra, 479 U.S. at 216 ("[A] nonmember's desire to participate in the party's affairs is overborne by the countervailing and legitimate right of the party to determine its own membership qualifications."); Maslow v. Bd. of Elections in N.Y.C., 658 F.3d 291, 296 (2d Cir. 2011), cert. den. 132 S.Ct. 1745, 182 L.Ed.2d 558 (2012) ("Because political parties have a strong associational right to exclude non-members from their candidate nomination process, plaintiffs have no constitutional right pursuant to which such participation may be effected."); see also Duke v. Cleland, 954 F.2d 1526 (11th Cir. 1992)(holding that the Republican Party of Georgia could ask the Secretary of State to deny a candidate access to the ballot); Smith v. Penta, supra, 81 N.J. at 77 (noting that New Jersey's closed primary system is designed to prevent certain types of individuals from voting in primaries, including voters looking

to support a weak candidate in a rival panty); Lesniak v. Budzash, supra, 133 N.J. at 16.

Therefore, the constitutional rights of political parties to freely associate trumps the voters' rights to participate in a primary election. Cf. Tashjian v. Republican Party of Conn., supra. 479 U.S. at 216. Indeed, in New Jersey a non-party member has no constitutional right to participate in a closed primary. Smith v. Penta, supra, 81 N.J. at 73-74 ("In this state, the right to participate in a political party's primary election is a statutory one."). In Timmons v. Twin Cities Area New Party, supra, the Supreme Court held that any burden imposed by the ballot access statute was justified by a "correspondingly weighty" valid state interest in ballot integrity and political stability. 520 U.S at 370. The Court found that the state's "strong interests in the stability of their political systems,...permit[s] them to enact reasonable regulations that may, in practice, favor the traditional two-party system." Id. at 367. The Court opined that a strong two-party system served to "temper the destabilizing effects of party-splintering and excessive factionalism," and that "[t]here can be little doubt that the emergence of a strong and stable two-party system in this country has contributed enormously to sound and effective government." Ibid. (quoting Davis v. Bandemer, 478 U.S. 109, 144-45 (1986) (O'Connor, J., concurring)).

These valid state interests of political stability support the New Jersey scheme which is under attack here. In Smith v. Penta, the New Jersey Supreme Court upheld the constitutional validity of the party-affiliation requirements set forth in N.J. Stat. Ann. § 19:23-45. The Court observed that "restricting participation in the candidate-selection process to members of a political party advances two significant interests." Id. at 69. One, it "protects the associational rights of the party's membership 'from intrusion by those with adverse political principles.'" Ibid, citing Nader v. Schaffer, supra, (quoting Ray v. Blair, 343 U.S. 214, 220-21, (1952)). Two, it protects the integrity of the electoral process. Smith v. Penta, supra, 81 N.J. at 76-77. In Smith, the Court stated that "[o]ne way political parties advance shared beliefs is by selecting candidates representing those shared beliefs to run in the general election." Ibid. "The right to participate in a party's candidate-selection process thus vests only in those who are associated together in pursuit of shared political ideals." Ibid.

Indeed the courts have recognized the states' interests in restricting participation in closed primaries to party members. In Rosario v. Rockefeller, supra, the United States Supreme Court recognized a state's strong interest in protecting political parties from the "raiding" of their closed primaries.

12

410 U.S. at 752. Moreover, courts have repeatedly affirmed the right of political parties to exclude non-members from the primary process. See e.g. Duke v. Cleland, supra, 954 F.2d at 1532 ("[T]he inclusion of persons unaffiliated with a political party may seriously distort its collective decisions--thus impairing the party's essential functions--and that political parties may accordingly protect themselves from "'intrusions by those with adverse political principles.'") (citation omitted).

These underlying interests apply with equal force to petition circulators. Since political parties have the constitutional right to govern their own internal processes, including the right to exclude people from participating in the primary process, it is reasonable to exclude non-partisans from circulating nominating petition in partisan primaries. As noted by the Supreme Court, states' have a strong interest in protecting political parties from the "raiding" of closed primary elections. Rosario v. Rockefeller, supra, 410 U.S. at 752.

Indeed more recently, the Second Circuit applied less exacting scrutiny to a restriction on petition circulators in Maslow v. Board of Elections, supra, 658 F.3d at 296, which held that the "party witness rule" for circulators in primacy elections is not subject to strict scrutiny because non-partisans have no constitutional right to participate in

13

partisan primaries. In <u>Maslow</u>, New York enacted the Party Witness Rule in the early 1950s, apparently in response to incidents of "party raiding," whereby members of one party would actively participate in the primary of a rival party in the hope of influencing that party's candidate nomination and thus improving their own chances in the general election. 658 <u>F.</u>3d at 294. Subject to an exception for notaries public and commissioners of deeds, the only people allowed to circulate designating petitions were registered voters who were members of the party from which the candidate was seeking nomination. <u>Ibid.</u> The petition circulators were known as "subscribing witnesses" who, along with the candidates seeking the Democratic party's nomination for Civil Court Judges were the plaintiffs in the action. <u>Id.</u> at 294-95. The plaintiffs sought a declaratory judgment that the "party witness rule" violated their constitutional rights protected by the First and Fourteenth Amendments, and an injunction preventing the New York City Board of Elections from enforcing the rule. <u>Id.</u> at 295.

The court held that the rule imposed little or no burden on the plaintiffs' First Amendment rights. <u>Id.</u> at 296. The court opined that "[b]ecause political parties have a strong associational right to exclude non-members from their candidate nomination process, the plaintiffs had "no constitutional right pursuant to which such participation may be effected." <u>Id.</u> at

296-97.  Relying on Buckley v. American Constitutional Law Foundation, Inc., 525 U.S. 182, 193, (1999) and Meyer v. Grant, 486 U.S. 414, 422-23 (1988), as well as the court's own decision in Lerman v. Bd. of Elections of New York City, 232 F.3d 135, 149-53 (2d Cir. 2000), the court observed that plaintiffs "attempted to transform their associational claim into a free speech claim by arguing that the circulation of designating petitions is 'interactive political speech' that New York may only restrain subject to strict scrutiny." Id. at 298. Rejecting this claim, the court acknowledged that "petition circulating is a form of highly protected political speech," but plaintiffs were "only restrained from engaging in speech that is inseparably bound up with the subscribing witness plaintiffs' association with a political party to which they do not belong." Ibid. The court found that since the plaintiffs had no right to this association, they had "no right to engage in any speech collateral to it," and had not demonstrated any non-trivial burden to their First Amendment rights. Ibid. Finally, the court noted that the State had a legitimate interest in protecting its political parties from party raiding, and that the "party witness rule" helped to "combat party raiding by denying hostile non-party elements access to one part of a political party's nomination process." Ibid., citing Rosario v. Rockefeller, supra, 410 U.S. at 760-62.

Because the party affiliation requirement of N.J. Stat. Ann. § 19:23-11 affirmatively protects the constitutional rights of political parties to associate freely, Nader v. Schaffer, supra, 417 F. Supp. at 847; Smith, supra, 81 N.J. at 77, this Court should apply the balancing test afforded to such a provision and uphold the party affiliation requirement in N.J. Stat. Ann. § 19:23-11 as justified by "important regulatory interests." Timmons v. Twin Cities Area New Party, supra, 520 U.S. at 358. By requiring that political party circulators to be members of the same political party as the candidate named in the petition, and in recognition of the State's strong interest in protecting political parties from the "raiding" of their closed primaries, Rosario v. Rockefeller, supra, 410 U.S. at 760-62, N.J. Stat. Ann. § 19:23-11 preserves the associational rights of New Jersey political parties protected by the First Amendment, including the right to exclude people from participating in the primary process, Democratic Party of U.S., supra, 450 U.S. at 112.

As such, the party affiliation requirement of N.J. Stat. Ann. § 19:23-11 is justified by "important regulatory interests", Timmons v. Twin Cities Area New Party, supra, 520 U.S. at 358, and should be upheld as constitutional.

### B. Residency Requirement

Courts apply strict scrutiny with respect to state laws placing geographic restrictions on citizen's First Amendment rights to engage in the political process. See Buckley v. American Constitutional Law Foundation, Inc., supra, 525 U.S. at 193 (holding that a Colorado law could not pass strict scrutiny where it permitted only registered voters of Colorado to circulate initiative petitions for ballot access); Krislov v. Rednour, 226 F.3d 851, 856 (7th Cir. 2000) (holding that Illinois's law requiring primary party petition circulators to registered voters within a certain the same political subdivision for which a candidate was seeking office violated the First Amendment); and Lerman v. Bd. of Elections of New York City, supra, 232 F.3d at 139, 150, n. 4 (holding that New York's law requiring an Independent Party candidate petition be witnessed by thirty-eight "resident[s] of the political subdivision in which the office or position is to be filled" was not narrowly tailored to achieve the state's compelling interest in ensuring the integrity of the ballot access process than the local witness residence requirement, while noting in dicta that New York's Statewide residency requirement, which is strikingly similar to N.J. Stat. Ann. § 19:23-11, was so narrowly tailed and would survive the strict scrutiny analysis.)

17

N.J. Stat. Ann. § 19:23-11's Statewide voter registration requirement passes strict scrutiny.  Notably, while the SVRS serves to verify the party affiliation of a New Jersey registered voter who wishes to circulate a political party petition, such information is not available through the SVRS for an out-of-state individual.  Further, there is no known nationwide network accessible by election officials within this State to verify the political party status of a potential circulator who resides out of State.  In other words absent a public record similar to the state's SVRS, an out-of-state individual may baldly assert political party status with no known credible source or mechanism to verify the assertion, nor any guarantee that information will be forthcoming and timely provided by any other state to verify party affiliation.

The same principles that justify the political party affiliation requirement apply with equal force to the requirement that the circulator be a New Jersey registered voter.  When amending N.J. Stat. Ann. § 19:23-11, the New Jersey Legislature intended "to have petition circulators be residents of this State because it is an important State interest for residents to control the petition process." [Assembly Floor Amendment Statement, Assembly No. 3629, L. 2014, c.83, (December 31, 2014).

Moreover, the Legislative declaration proclaiming the state's interest in controlling the party petition process is consistent with settled law recognizing a state's strong interest in protecting political parties from the raiding of their closed primaries, and in preserving the associational rights of New Jersey political parties. Rosario v. Rockefeller, supra, 410 U.S. at 760-62. Indeed, the statutory mandate that circulators be registered voters of New Jersey and members of the political party of the candidate for whom they wish to circulate petitions is narrowly tailored to the state's compelling interest in ensuring the integrity of the ballot access process, political stability, and "temper[ing] the destabilizing effects of party-splintering and excessive factionalism," and serves the State's compelling regulatory interests. Timmons v. Twin Cities Area New Party, 520 U.S. at 357-58.

Therefore, the Court should uphold the Statewide voter registration requirement of N.J. Stat. Ann. § 19:23-11.

### C. **The Statute As Applied**

#### (i) **Wilmoth and Signature Masters, Inc.**

Plaintiff Wilmoth is a professional circulator and a registered voter in the State of Michigan and a "dues paid member of the Michigan Democratic Party." (Complaint §7). Wilmoth functions as the Chief Relations Officer of plaintiff

Signature Masters, Inc. Wilmoth could not circulate a petition for the Democratic candidate in New Jersey because he is not registered to vote in New Jersey. N.J. Stat. Ann. § 19:23-11.

Recently, a federal court in Connecticut, granted Wilmoth a temporary restraining order (TRO) enjoining the Secretary of State (Secretary) from enforcing a statute which limited circulators of political party petitions to "an enrolled party member of a municipality in [Connecticut] who is entitled to vote." Wilmoth v. Merrill, 2016 U.S. Dist. LEXIS 26134 (D. Conn. March 1, 2016). In that case, Wilmoth claimed he was a dues paying member of the Michigan Democratic Party since February 2016, and wished to circulate petitions in the State of Connecticut for Rocky De La Fuente in that State's Democratic Presidential primary. Wilmoth, supra, U.S. Dist. LEXIS at 2. Wilmoth argued under Buckley and Lerman that the statute imposed a residency restriction that burdened his rights to free speech under the First and Fourteenth Amendments. Ibid. The Secretary argued that the statute imposed a party membership restriction for party primary petition circulators approved by the court in Maslow. Ibid.

The court agreed with Wilmoth and granted the TRO. The court was satisfied that Wilmoth met the membership requirement of the statute finding that the Democratic Party of Connecticut was a branch of the National Party. Wilmoth, supra, U.S. Dist.

LEXIS at 4-6. Citing <u>Maslow</u>, the court also held that the Connecticut state residency requirement burdened core political speech. <u>Ibid.</u>

As noted, <u>Maslow</u> involved non-party petition circulators who wished to circulate partisan primary election petitions, and the Second Circuit, applying less exacting scrutiny, held that the "party witness rule" for circulators in primacy elections is not subject to strict scrutiny because non-partisans have no constitutional right to participate in partisan primaries. 658 <u>F.</u>3d at 296.

Moreover, the court in <u>Wilmoth</u>, ignored that part of the Second Circuit's prior opinion in <u>Lerman</u>, which drew a distinction between the challenged New York law requiring that petition witnesses reside in the same political division as the candidate and that State's provision which required statewide residency. As noted, the court concluded that the law which required that petition witnesses be qualified voters in the State of New York and registered members of the party of the candidate for whom they wish to circulate petitions was more narrowly tailored to the state's interest in ensuring the integrity of the ballot access process than the (local) witness residence requirement. 232 <u>F.</u>3d at 150, <u>n.</u> 4. Significantly, the New York state residency law cited in <u>Lerman</u> mirrors <u>N.J. Stat. Ann.</u> § 19:23-11, which is being challenged here.

21

In amending N.J. Stat. Ann. § 19:23-11 and declaring that it was an important state interest for residents [and members of political parties] to control the petition process, the New Jersey Legislature, no doubt, recognized the State's strong interest in protecting political parties from the "raiding" of their closed primaries, Rosario v. Rockefeller, supra, 410 U.S. at 760-62, and preserving the associational rights of New Jersey political parties protected by the First Amendment. Democratic Party of U.S. v. Jones, supra, 450 U.S. at 112.

As pointed out, Wilmoth claims to be a member of the Democrat Party in Michigan since February 2016. Critically, unlike the case of a New Jersey resident, such assertion cannot be verified through New Jersey's SVRS and there is no known method to verify his claim. If a New Jersey registered voter and member of a New Jersey political party were to switch parties, that information would be immediately entered into the SVRS database. N.J. Stat. Ann. § 19:31-31c(1),(2)(11). And if that person were to attempt to circulate a petition of another political party, there would be a public record in New Jersey to verify that activity. Ibid.

Not so with Wilmoth. As an out of state resident, the SVRS will not verify his current or future party affiliation. Accordingly, N.J. Stat. Ann. § 19:23-11 assures that only members of a political party may circulate a party petition

thereby hindering attempts at "party "raiding," which the Supreme Court has recognized as a state's strong interest. Rosario v. Rockefeller, supra, 410 U.S at 758.

Indeed, the state voter registration requirement is inextricably tied to the party affiliation requirement, and is similarly justified by "important regulatory interests." Timmons v. Twin Cities Area New Party, supra, 520 U.S. at 357-58. Plainly, New Jersey's residency requirement for a political party petition circulator is narrowly tailored to the state's interest in ensuring the integrity of the ballot access process. Lerman v. Bd. of Elections of New York City, supra, 232 F.3d at 150, n. 4. For these reasons, this court should reject the court's ruling in Wilmoth.

The same principles for denying relief to Wilmoth apply with equal force to Signature Masters, Inc. As a Michigan corporation, the entity is not a "person" and may not qualify as a member of a New Jersey political party. As such, Signature Masters is in no position to assert a political party's associational rights, and is without any right of its own to exert influence over the nomination process. See New York State Board of Elections v. Lopez Torres, supra, 552 U.S. at 202-03; Cal. Democratic Party v. Jones, supra, 530 U.S. at 583-84; see also Rosario v. Rockefeller, supra, 410 U.S. at 758.

23

### (**ii) Pool and Benezet, LLC**

As a person in the business of circulating political party petitions, Plaintiff Pool too claims that that the New Jersey voter registration requirement and residency requirement places a severe burden on his core political speech protected by the First Amendment and is subject to strict scrutiny. The Supreme Court has declared that petition circulation is "core political speech," because it involves "interactive communication concerning political change," for which First Amendment protection is "at its zenith". Buckley v. American Constitutional Law Foundation, Inc., supra, 525 U.S. at 186-87; Meyer v. Grant, supra, 486 U.S. at 422, 425. However, as noted, the Court has also held that a political party's associational right to exclude forecloses the possibility that non-party members have an independent First Amendment right to participate in party affairs. Cal. Democratic Party v. Jones, supra, 530 U.S. at 583-84; Tashjian v. Republican Party of Conn., supra, 479 U.S. at 216; see also Rosario v. Rockefeller, supra, 410 U.S. at 758.

Pool, as is the case with Wilmoth, resides out of state. Pool is a resident of Texas and claims to be a registered member of the Texas Republican Party. Complaint ¶10. Like Michigan, Texas conducts open primary elections for the Office of

24

President of the United States. <u>See</u> <u>Tex.</u> <u>Elec.</u> <u>Code</u> §§1.005(24), 191.004(b).

Pool wishes to circulate the petitions for "one or more Republican candidates seeking the nomination of the Republican Party for the Office of President of the United States." <u>Complaint</u> ¶10. Critically, however, Pool further wishes to "cross-over" and participate in the nominating process of the Democratic Party for President as a circulator for Democratic Party candidates seeking that Party's nomination as well. <u>Ibid</u>. Pool "wants to circulate nomination petitions for Democratic candidates because he believes that nomination of Democrats closest to his political views advances his political philosophy to a greater extent than the nomination of Democrats espousing more extreme political views that those advocated by . . . Pool." <u>Ibid.</u> In such circumstances, Pool's true political party allegiance is simply unknown.

Consequently, the state residency requirement does not place a severe burden on Pool's core political speech  because Pool has no independent First Amendment right to participate in party affairs under this State's closed primary system. <u>Cal.</u> <u>Democratic Party v. Jones</u>, <u>supra</u>, 530 <u>U.S.</u> at 583-84; <u>Tashjian</u> <u>v. Republican Party of Conn.</u>, <u>supra</u>, 479 <u>U.S.</u> at 216; <u>see</u> <u>also</u> <u>Rosario v. Rockefeller</u>, <u>supra</u>, 410 <u>U.S.</u> at 758. As noted, closed primary systems and the right of political parties to exclude

25

people from membership have repeatedly been held constitutional in cases throughout the country. New York State Board of Elections v. Lopez Torres, supra, 552 U.S. at 202-03; Cal. Democratic Party v. Jones, supra, 530 U.S. at 583-84; see also Rosario v. Rockefeller, supra, 410 U.S. at 758. Indeed, in New Jersey a non-party member has no constitutional right to participate in a closed primary. Smith v. Penta, supra, 81 N.J. at 73-74.

For the reasons stated above, Pool enjoys no known associational rights of the Democratic Party. Nor is Pool a registered voter of New Jersey, and therefore may not circulate a petition for a recognized political party in the state. The state voter registration requirement is inextricably tied to the party affiliation requirement, and is similarly justified by compelling state interests. Timmons v. Twin Cities Area New Party, supra, 520 U.S. at 358. Plainly, New Jersey's residency requirement for a political party petition circulator is narrowly tailored to the state's interest in ensuring the integrity of the ballot access process. Lerman v. Bd. of Elections of New York City, supra, 232 F.3d sat 150. Accordingly, Pool's claim that N.J.S.A. 19:23-11 imposes a hardship on his ability to disseminate speech to the voters of New Jersey is without merit.

The same principles for denying relief to Pool apply with equal force to his company Benezet Consulting, LLC, of which Pool serves as president. As a Texas entity, it is not a person and may not qualify as a member of a New Jersey political party. As such, Benezet is in no position to assert the parties' associational rights, and is without any right of its own to exert influence over the nomination process. New York State Board of Elections v. Lopez Torres, supra, 552 U.S. at 202-03; Cal. Democratic Party v. Jones, supra, 530 U.S. at 583-84; Rosario v. Rockefeller, supra, 410 U.S. at 758.

To conclude, because plaintiffs are neither registered voters of the State of New Jersey they may not circulate primary election nominating petitions for party candidates in New Jersey's primary election. N.J. Stat. Ann. § 19:23-11. Indeed, the enforcement of N.J. Stat. Ann. § 19:23-11 is narrowly tailored to advance the state's compelling interest in ensuring a strong two-party system and serves an important state regulatory interest. Timmons v. Twin Cities Area New Party, supra, 520 U.S at 367. Accordingly, plaintiffs' constitutional challenge to N.J. Stat. Ann. § 19:23-11 as applied to the plaintiffs should be denied and the complaint dismissed with prejudice.

<u>**CONCLUSION**</u>

For the forgoing reasons, this Court should grant defendant's motion to deny plaintiffs application for declaratory and injunctive relief and to dismiss the complaint.

Respectfully submitted,

CHRISTOPHER S. PORRINO
ACTING ATTORNEY GENERAL OF NEW JERSEY


By:   */s/ Alan C. Stephens*
Alan C. Stephens (6371)
Deputy Attorney General
NJID# 013941985

Dated: July 5, 2016

28