LAWRENCE M. OTTER, ESQUIRE
PA I.D. # 31383
Attorney for Plaintiffs
P.O. Box 575
Silverdale, PA  18962

PAUL A. ROSSI, ESQUIRE
PA. I.D. # 84947
IMPG Advocates, Inc.
Attorney for Plaintiffs
*Admission Pro Hac Vice Pending*
873 East Baltimore Pike, Suite #705
Kennett Square, PA  19348

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **SHAWN WILMOTH, TRENTON POOL,** | : | **Civil Action** |
| **SIGNATURE MASTERS, INC., and,** | : | **No. 16-1854-PGS-DEA** |
| **BENZET CONSULTING LLC** | : | |
| | : | **Hon. Peter Sheridan, U.S.D.J.** |
| **Plaintiffs,** | : | |
| | : | **<u>Brief in Opposition</u>** |
| **v.** | : | |
| | : | |
| **KIM GUADAGNO, in her official capacity as,** | : | |
| **LT. GOVERNOR & SECRETARY OF** | : | |
| **STATE OF NEW JERSEY,** | : | |
| | : | ***Filed Electronically*** |
| **Defendant.** | : | |

To:     William T. Walsh, CLERK OF THE COURT

Christopher S. Porrino, Esq.
Acting Attorney General of New Jersey
Attorney for Defendant.
State of New Jersey
R.J. Hughes Justice Complex
25 Market Street., P.O. Box 112
Trenton, New Jersey  08625

Alan C. Stephens, Esq.
Deputy Attorney General
Attorney for Defendant
State of New Jersey
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 112
Trenton, New Jersey  08625
Alan.Stephens@lps.state.nj.us
(609) 292-6123

GENTLEMEN:

PLEASE TAKE NOTICE, that on September 9, 2016 , or as soon thereafter as counsel may be heard, the undersigned Lawrence M. Otter, Esq., on behalf of all plaintiffs shall move before the Honorable Peter G. Sheridan U.S.D.J. in the United States District Court, Trenton, New Jersey for an order denying defendant's pending motion, pursuant to Fed.R.Civ.P. 12 (b) (6), for an order dismissing all counts of the complaint as against Defendants.

Plaintiffs request oral argument in addition to the briefs submitted.

Respectfully submitted,

Dated:  August 22, 2016                    By:      __/s/ *Lawrence M. Otter*____
                                                     LAWRENCE M. OTTER, ESQUIRE
                                                     **ATTORNEY FOR PLAINTIFFS**
                                                     PA ATTORNEY ID #31383
                                                     P.O. Box 575
                                                     Silverdale, PA  18962
                                                     267-261-2948
                                                     Email:  larryotter@hotmail.com

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SHAWN WILMOTH, TRENTON POOL, | : | Civil Action |
| SIGNATURE MASTERS, INC., and, | : | No. 16-1854-PGS-DEA |
| BENZET CONSULTING LLC | : | |
| | : | Hon. Peter Sheridan, U.S.D.J. |
| Plaintiffs, | : | |
| | : | Brief in Opposition |
| v. | : | |
| | : | |
| KIM GUADAGNO, in her official capacity as, | : | |
| LT. GOVERNOR & SECRETARY OF | : | |
| STATE OF NEW JERSEY, | : | |
| | : | Filed Electronically |
| Defendant. | : | |

## PLAINTIFFS BRIEF IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS COMPLAINT
## PURSUANT TO FED. R. CIV. P. 12 (b) (6)

LAWRENCE M. OTTER, ESQUIRE
PA I.D. # 31383
Attorney for Plaintiffs
P.O. Box 575
Silverdale, PA  18962

PAUL A. ROSSI, ESQUIRE
PA. I.D. # 84947
IMPG Advocates, Inc.
Attorney for Plaintiffs
*Admission Pro Hac Vice Pending*
873 East Baltimore Pike, Suite #705
Kennett Square, PA  19348

# <u>TABLE OF CONTENTS</u>

Table of Contents…………………………………………………………………..…i

Table of Authorities………………………………………………………………ii

Argument…………………………………………………………………….....1

I.    Legal Standard on a Motion to Dismiss………...………….…………….…...1

II.    Plaintiffs' Complaint State Valid Claims Upon Which Relief
Can & Should be Granted………………………………….……...……3

III.    Plaintiffs' Facial Claims Are, In Fact, Valid & Not Merely Properly Plead…....…6

    A.    Strict Scrutiny Applies to In-State & Voter Registration
Circulator Requirements of N.J.S.A. § 19:23-11…………………….……6

        1.    The Burden on Proponents of Referendum
& Petition Circulation…………………………………………13

        2.    The Burden on Circulators………………………………14

        3.    The Burden on Potential Signers………………………...……15

    B.    N.J.S.A. § 19:23-11 is Not Narrowly Tailored to Advance a
Compelling Governmental Interest Where Plaintiffs Agree to Submit
to the Jurisdiction of the State of New Jersey…………………….....…16

IV.    Plaintiffs' As-Applied Claims Are, In Fact, Valid & Not Merely
Properly Plead……………………………………………………………18

V.    "Party Raiding" is Not Applicable to Instant Case………………………20

Conclusion………………………………………………………………...…..21

Certificate of Service…………………………………………………………22

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Anderson v. Celebrezze*,
460 U.S. 786 (1983)……………………………………...………………*passim*

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)……………………………………………………….2

*Board of Educ., Island Trees Union Free School Dist, No. 26 v. Pico*,
457 U.S. 853 (1982)……………………………………………….……..15

*Buckley v. American Constitutional Law Foundation*,
525 U.S. 182 (1999)……………………………………………...……………*passim*

*Burdick v. Takushi*,
504 U.S. 428 (1992)…………………………………………..……………...11, 16

*Citizens in Charge v. Gale*,
810 F.Supp.2d 916 (D. Neb. 2011)……………………………...…………..*passim*

*Conley v. Gibson*,
355 U.S. 41 (1957)…………………………………………………..…...2

*Continental Collieries, Inc. v. Shober*,
130 F.2d 631 (3d Cir. 1942)……………………………………………………2

*Daien v. Ysursa*,
711 F.Supp.2d 1215 (D. Idaho 2010)……………………………..…………*passim*

*Federal Election Com'n v. Wisconsin Right to Life, Inc.*,
551 U.S. 449 (2007)…………………………………………….………....16, 21

*Green Party of Pennsylvania v. Aichele*,
89 F.Supp3d 723 (E.D. Pa. 2015)……………………...…….....…………10, 12, 14, 17

*Hishon v. King & Spalding*,
467 U.S. 69 (1984)……………………………………………………...1

*Illinois State Board of Elections v. Socialist Workers Party*,
440 U.S. 173 (1979)………………………………………………..…16

*Kost v. Kozakiewicz*,
1 F.3d 176 (3rd Cir. 1993)……………………………………………...…..1

*Krislov v. Rednour*,
    226 F.3d 851 (7th Cir. 2000)……………………………………………...*passim*

*Labalokie v. Capitol Area Intermediate Unit*,
    926 F.Supp. 503 (M.D. Pa. 1996)……………………………………..……1

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*,
    507 U.S. 163 (1993)…………………………………………………..……1

*Lerman v. Board of Education*,
    232 F.3d 135 (2nd Cir. 2000)…………………………………………....……15

*Libertarian Party of Connecticut v. Merrill*,
    3:15-cv-01851 (D. Conn., January 27, 2016)………………………............11, 17

*Libertarian Party of Virginia v. Judd*,
    718 F.3d 308 (4th Cir. 2013)………………………………………….......10, 12, 17

*Maslow v. Board of Elections in City of New York*,
    658 F.3d 291 (2011)……………………………………………………...……19

*McCloud v. Testa*,
    97 F.3d 1536 (6th Cir.1996)……………………………………..……9

*Meyer v. Grant*,
    486 U.S. 414 (1988)………………………………………………………6

*Molinari v. Powers*,
    82 F.Supp.2d 51 (E.D. NY 2000)…………………………………..……..9

*Nader v. Blackwell*,
    545 F.3d 459 (6th Cir. 2008)……………………….…………………*passim*

*OpenPittsburgh.Org v. Wolosik*,
    1:16-cv-1075 (W.D. Pa. August 5, 2016)…………………………………11

*Papasan v. Allain*,
    478 U.S. 265 (1986)………………………………………………………2

*Quincy Cable TV, Inc. v. FCC*,
    768 F.2d 1434 (1985)………………………………………….……16

*Rocks v. Philadelphia*,
    868 F.2d 644 (3rd Cir. 1989)……………………………………..…….1

*Rosario v. Rockefeller*,
    410 U.S. 752 (1973)……………………………………...…………20

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974)………………………………………….....1, 2

*Stanley v. Georgia*,
    394 U.S. 557 (1969)……………………………………...……………15

*Swierkiewicz v. Sorema, N.A.*,
    534 U.S. 506 (2002)……………………………………………….…1

*Turner Broad. Sys., Inc. v. FCC*,
    512 U.S. 622 (1994)………………………………………...…....16, 21

*Unger v. National Residence Matching Program*,
    928 F.2d 1392 (3rd Cir. 1991)……………………………………….……1

*Yes on Term Limits v. Savage*,
    550 F.3d 1023 (10th Cir. 2008)………………………………….………17

*Wilmoth v. Merrill*,
    3:16-cv-0223 (D. Conn., March 1, 2016)……………………….............…………11, 14, 17, 19

## Statutes & Rules

42 U.S.C. § 1983…………………………………………………………..1

Fed.R.Civ.P. 8 (a)……...………………………………………….1

Fed.R.Civ.P. 9…………………………………………………...………1

Fed.R.Civ.P. 12 (b)(6)…………………………………………..….*passim*

N.J.S.A. § 19:23-5……………………………………………..………4

N.J.S.A. § 19:23-11…………………………………..….*passim*

## Other Authority

Wright & A. Miller, Federal Practice and Procedure
    §1216, pp. 235-36 (3d ed. 2004)……………………………………….…2

Wright & A. Miller, Federal Practice and Procedure
    § 1357, pp. 358-59 (2nd ed. 1990)…………………………………...…….2

## ARGUMENT

**I.      Legal Standard on a Motion to Dismiss.**

Except for allegations of fraud and mistake, the Federal Rules of Civil Procedure require that "[a] pleading that states a claim for relief must contain…a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a) and 9.  A unanimous Supreme Court expressly disclaimed a heightened pleading standard for civil rights actions filed under 42 U.S.C. § 1983.  In *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993), the Court held that heightened pleading violated the rubric of the Federal Rules.  *Id.* at 168, *see also Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512 (2002).  In considering whether a complaint should have been dismissed for failure to state a claim upon which relief can be granted, the court must consider only those facts alleged in the complaint and accept all of the allegations as true.  *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984).

The purpose of a motion to dismiss is to test the legal sufficiency of the allegations contained in the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3rd Cir. 1993).  In *Kost*, the Third Circuit held that complaints need only set forth sufficient information to: 1) outline the elements of a claim; or 2) allow inferences to be drawn which support the existence of the elements of a claim.  *Id.*  Thus, in reviewing a motion to dismiss this Court must accept "as true the facts alleged in the complaint and all reasonable inferences that can be drawn from them." *Unger v. National Residence Matching Program*, 928 F.2d 1392, 1394-95 (3rd Cir. 1991); *see also Rocks v. Philadelphia*, 868 F.2d 644 (3rd Cir. 1989); *Labalokie v. Capitol Area Intermediate Unit*, 926 F.Supp. 503, 506 (M.D. Pa. 1996).  In *Scheuer v. Rhodes*, 416 U.S. 232 (1974) the Supreme Court stated:

> "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."

*Id*. at 236.

As the Supreme Court further held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff is not required to set forth "detailed factual allegations" in order to survive a motion to dismiss. *Id*. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). To survive a motion to dismiss, a complaint must merely contain sufficient factual matter, accepted by the court as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. Plaintiff's complaint need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief." in order to "give the defendant fair notice of what the …claim is and the grounds upon which is rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Factual allegations must be enough to raise a right to relief above the speculative level. *See* C. Wright & A. Miller, Federal Practice and Procedure §1216, pp. 235-36 (3d ed. 2004). Finally, a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense, like the statute of frauds, appears on its face. *Continental Collieries, Inc. v. Shober*, 130 F.2d 631, 635 (3d Cir. 1942) ("where the defect [of the statute of frauds] appears on the face of the pleading, the question may be raised on motion to dismiss for insufficiency"); see 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 358-59 (1990).

Defendant's brief in support of her 12(b)(6) motion to dismiss plaintiffs' complaint replete with improper attempts to elevate a motion to dismiss on the pleadings into a full trial on the merits, without affording plaintiffs the opportunity for full discovery which will establish the challenged statute is not narrowly tailored to advance a compelling governmental or regulatory interest sufficient for plaintiffs to prevail under strict scrutiny analysis of their facial and as

applied constitutional claims.  Furthermore, to the extent that this Court deviates from Supreme Court precedent and the established consensus of federal district and courts of appeal that strict scrutiny analysis applies to the review of restrictions on out-of-state election petition circulators at issue in this action, plaintiffs will establish, through fact discovery, that even on a sliding scale analysis, the challenged restrictions on the circulation of election petition in New Jersey impose a severe restriction on core political speech afforded the "highest protections" under the First Amendment to the United States Constitution without a sufficient state interest to counter-balance the challenged statute's impairment of First Amendment speech necessary to save the statute from constitutional scrutiny.

Instead of an analysis of the sufficiency of plaintiff's pleadings, defendant's legal counsel raise disputed issues of fact and law which: (1) are beyond the scope of the pleadings; (2) are not, in any event, dispositive of the claims raised in plaintiffs' complaint; and (3) ignore the established consensus of federal district and circuit courts of appeal that plaintiffs' claims raised in the instant action are, in fact, valid constitutional claims upon which relief has been consistently granted both at the preliminary injunction and final merits stage of adjudication. Accordingly, as explained with more particularly below, defendant's motion to dismiss must be denied.

## II.   Plaintiffs' Complaint State Valid Claims Upon Which Relief Can & Should Be Granted.

**Every** federal district and circuit court of appeal has determined, on the merits of the case, that strict scrutiny applies to the constitutional analysis of state laws which restrict the ability of out-of-state circulators to freely circulate election petitions when an out-of-state circulator pleads, as is the case in the instant action, that he/she is willing to submit to the jurisdiction of the State for the purpose of any investigation and/or prosecution of any alleged

violation of laws related to the circulation of election petitions in which he/she intends to circulate election petitions. **Every** federal district and circuit court of appeal has determined, based on United States Supreme Court precedent, that strict scrutiny applies to any analysis of restriction placed on out-of-state election petition circulators because of the vast number of persons excluded from core political speech in the state imposing the restriction, in the case of the instant action over 320 million citizens of the United States are subject to the challenged restriction placed on out-of-state circulators in New Jersey. **Every** federal district and circuit court of appeal has determined on the facts of the instant case, that state imposed restrictions on out-of-state circulators are not narrowly tailored to advance a compelling governmental interest sufficient to survive strict scrutiny analysis and have stuck the restrictions as unconstitutional.

Plaintiffs properly allege that: (1) Pursuant to N.J.S.A. § 19:23-5, candidates of political parties must be nominated exclusively by members of the same political party by petition. Compl. ¶ 23; (2) Pursuant to N.J.S.A. § 19:23-11, plaintiffs are forbidden from circulating nomination petition in the State of New Jersey without an in-state witness who is also a registered voter of New Jersey of the same political party named in the petition; Compl. ¶¶ 25-26, 28; (3) Plaintiffs are residents and registered voters of the Democratic (plaintiff Wilmoth) and Republican (plaintiff Pool) parties of states other than New Jersey.  Compl.  ¶¶ 7, 10; (4) Plaintiffs are professional election petition circulators willing to sign an affidavit or any other paper placing them within and consenting to the jurisdiction of New Jersey prosecutorial and/or judicial officials with respect to any investigative and/or judicial procedure seeking to prosecute violations of New Jersey election law as a condition precedent to being permitted to freely circulate as a non-resident, nomination petitions in New Jersey for future primary elections. Compl. ¶¶ 7-12, 14-15, 45; (5) Plaintiffs consider the circulation of election nomination petitions

4

as a means to associate with voters to advance the message and political agenda of the candidates for whom they circulate election petitions.  Compl. ¶¶ 7, 19; (6) Plaintiffs Wilmoth and Signature Masters, Inc., were hired by Roque De La Fuente, candidate for the 2016 nomination of the Democratic Party for President of the United States of America, to circulate his nomination petitions in the State of New Jersey, but was impaired in the efficient organization of the petition drive, as a direct and proximate result of the challenged statute,  because the requirement that his out-of-state professional circulators pair up with in-state registered Democrats limited the time and place that plaintiffs Wilmoth and Signature Masters, Inc., could circulate nomination petitions, thereby increasing the time and expense of the petition drive for plaintiffs Wilmoth and Signature Masters, Inc.  Compl. ¶¶ 9, 29-32, 34-35; (7) Plaintiffs Pool was preventing from circulating nomination petitions in New Jersey for Roque De La Fuente as a direct and proximate result of the challenged statute because plaintiff Pool was not able to identify, contact or locate New Jersey registered Democrats willing to pair up with his professional circulators during the short circulation period of nomination petitions in New Jersey, such that he was prohibited from exercising rights guaranteed to plaintiff Pool under the First Amendment to the United States Constitution.  Compl. ¶ 10, 36-38; (8)  All plaintiffs intend to circulate nomination petition in New Jersey in future primary elections.  Compl. ¶¶ 7, 10; (9) Declaratory and injunctive relief requested by plaintiffs will provide plaintiffs complete relief; (10) Plaintiffs have no other adequate remedy at law.  Compl ¶ 43.

Accordingly, plaintiffs have clearly plead that all plaintiffs have suffered concrete and actual constitutional and economic injury, both now and in the future, as a direct and proximate result of the challenged statute direct and concrete constitutional and economic harms, for which this Court has jurisdiction to remedy through the requested prospective equitable relief.

Plaintiffs have, in effect, plead with specificity (where specificity is not required) all of the elements of a constitutional claim against defendant's enforcement of the challenged statute – in essence, the gold standard in constitutional pleadings under the Federal Rules of Civil Procedure. Aa a result of the foregoing, defendant's motion to dismiss plaintiffs' complaint pursuant to Fed.R.Civ.P 12 (b)(6) must be rejected.  By way of a direct, and perhaps respectively blunt, exercise of legal counsel's duty of candor to this Court, it should also be respectfully noted that no federal court has **ever** dismissed a constitutional challenge to state imposed restrictions on the circulation of election petitions by out-of-state and/or unregistered circulators on a 12(b)(6) motion to dismiss.

While the foregoing analysis ought to end the Court's inquiry and sufficient to deny defendant's instant motion to dismiss, and despite the fact that plaintiffs' are under no current obligation to explicate the legal basis upon which plaintiffs' rest their claims, plaintiffs will nevertheless now go the extra mile (because we can) to explain why their claims are not just properly plead in order to withstand defendant's instant motion to dismiss, but why plaintiffs should actually prevail on their claims.

**III.**   **Plaintiffs' Facial Claims Are, In Fact, Valid & Not Merely Properly Plead.**

    **A.**   **Strict Scrutiny Applies to In-State & Voter Registration Circulator Requirements of N.J.S.A. § 19:23-11**

In evaluating ballot access cases, courts must "be vigilant . . . to guard against undue hindrances to political conversations and the exchange of ideas."  *Buckley v. American Constitutional Law Foundation*, 525 U.S. 182, 192 (1999).  The Supreme Court has twice considered statutes that restrict who may circulate election petitions in support of ballot access, and has twice invalidated the restriction.   In *Meyer v. Grant*, 486 U.S. 414 (1988), the Court struck down Colorado's prohibition on paid petition circulators.  Holding that the restriction was

"a limitation on political expression subject to exacting scrutiny" the Court reasoned that the state had failed to justify the burden on advocates' free speech rights. *Meyer*, 486 U.S. at 420. In *Buckley*, the Court invalidated a requirement that petition circulators be registered voters of the state, holding that the "requirement cuts down the number of message carriers in the ballot-access arena without impelling cause." *Buckley*, 525 U.S. at 197. Accordingly, the voter registration requirement of N.J.S.A. § 19:23-11 is flatly black letter law unconstitutional under existing U.S. Supreme Court precedent.

*Buckley*, in fact, directly refutes the bald legal assertions contained in defendant's brief that the State of New Jersey has a state interest in limiting circulators of election petitions for political parties to registered New Jersey voters of the party named in the nomination petition. Since the United States Supreme Court has ruled unconstitutional under the First Amendment to the United States Constitution state imposed requirements that circulators of election petitions must be registered voters, then the defendant cannot assert an interest in limiting circulators of nomination petition to registered voters of a New Jersey political party. Defendant's alleged state interest is in direct conflict with binding Supreme Court precedent. Furthermore, no federal court (Supreme or otherwise) has extended the legitimate First Amendment speech and association rights of political parties so far as to allow them to exclude either out-of-state residents or unregistered or registered members of other political parties within New Jersey from circulating election petitions and associating with New Jersey citizens who happen to be members of a political party. So long as a nomination petition is signed by a registered New Jersey voter of the political party named on the petition, it frankly does not matter who offered the voter the clipboard to sign (or to not sign) the nomination petition of a New Jersey candidate legitimately seeking the nomination of the political party of those signing the nomination

petition.  Yes, political parties have a First Amendment right to limit the selection of their standard-bearer to members of their political party, but the only operative signatures on nomination petitions in this process is that of registered voters of the political party at issue.  The political affiliation of the person offering the registered voter the clipboard with the nomination petition is of no constitutional import.  If a Martian descended from the heavens and offered a registered New Jersey Republican the opportunity to sign a nomination petition for Donald Trump in New Jersey, the only constitutionally relevant data point in the transaction for the State of New Jersey is did the registered New Jersey Republican sign or not sign Trump's nomination petition, not the fact that a Martian held the clipboard.  To extend this one step further, defendant argues that the State of New Jersey has a compelling interest, and the Republican Party has a First Amendment right, in nullifying the signature of a registered New Jersey Republican signing a Trump nomination petition for the sole reason that a Martian offer the New Jersey Republican the nomination petition to sign (or not sign).  Defendant can cite no binding precedent in favor of the preceding example.  In fact, the Supreme Court has explained that political parties cannot invoke the powers of the State to assure monolithic control over its own members and supporters.  *Anderson v. Celebrezze*, 460 U.S. 786, 803 (1983).

State restrictions placed on election petition circulation implicate restrictions on "core political speech" and are, therefore subject to strict scrutiny. *Meyer v. Grant*, 486 U.S. 414, 421-22 (1988) ("[T]he circulation of a petition involves the type of interactive communication concerning political change that is appropriately described as 'core political speech.' "); *Krislov v. Rednour,* 226 F.3d 851, 866 (7th Cir.2000) (stating that "circulating nominating petitions [for political candidates] necessarily entails political speech"). As the Supreme Court held in *Grant,* petition circulation "of necessity involves both the expression of a desire for political change and

8

a discussion of the merits of the proposed change." *Meyer*, 486 U.S. at 421.  It should be clear, however, that even if one characterizes this restriction on petition circulation as being more directly concerned with the "mechanics of the electoral process" than with speech, requiring us to evaluate the severity of the burdens on political speech and association posed by that regulation before determining the level of scrutiny to be applied, the witness residence requirement severely burdens political speech by "drastically reduc [ing] the number of persons ... available to circulate petitions." *Buckley.,* 119 S.Ct. at 643; *see id.* at 651 (Thomas, J., concurring) (restriction on petition circulation severely burdens speech if it "reduces the voices available to convey political messages"); *Grant*, 486 U.S. at 422-23 (prohibition on paid petition circulators restricts political speech by "limit[ing] the number of voices who will convey appellees' message and ... mak[ing] it less likely that appellees will garner the number of signatures necessary" to gain access to ballot, thereby limiting their ability to influence public political discussion); *Krislov,* 226 F.3d at 860 (statute limiting petition circulators to residents of the political subdivision for which the office is to be voted substantially burdens political speech by "preclud[ing] the candidate from utilizing a large class of potential solicitors to convey his message"); *Molinari v. Powers,* 82 F.Supp.2d 51, 76 (E.D. NY 2000) (witness residence requirement substantially burdens political speech because it reduces the number of individuals available to circulate designating petitions and, therefore, "reduces the chances that those supporting the candidates will gather signatures sufficient to qualify for the ballot"). Moreover, petition circulation bears an intimate relationship to the right to political or expressive association. The right to political association also "is at the core of the First Amendment, and even practices that only potentially threaten political association are highly suspect." *Krislov,*

226 F.3d at 860 (quoting *McCloud v. Testa,* 97 F.3d 1536, 1552 (6th Cir.1996)) (internal quotation marks omitted).

Although *Buckley* expressly reserved the question of whether residency requirements like the one at issue in this action would be unconstitutional, *Buckley*, 525 U.S. at 197, every federal court to address in-state circulator restriction, where the circulators are willing to place themselves under the jurisdiction of the state in which they want to circulate election petitions has expressly relied on *Buckley* and *Meyer* to hold such requirements unconstitutional in the context of both ballot initiative and candidacy petitions.  *See Citizens in Charge v. Gale*, 810 F.Supp.2d 916 (D. Neb. 2011) (invalidating state residency requirement for circulators of candidacy and ballot initiative petitions); *Nader v. Blackwell*, 545 F.3d 459 (6th Cir. 2008) (invalidating state residency requirement for circulators of presidential candidacy petitions); *Nader v. Brewer*, 531 F.3d 1028 (9th Cir. 2008) (same); *Daien v. Ysursa*, 711 F.Supp.2d 1215 (D. Idaho 2010) (same); *Krislov v. Rednour*, 226 F.3d 851 (7th Cir. 2000) (invalidating residency requirement for circulators of petition for congressional candidacy petitions); *Libertarian Party of Virginia v. Judd*, 718 F.3d 308 (4th Cir. 2013) (invalidating state residency requirement for circulators of candidacy petitions), aff'g 881 F.Supp.2d 719 (E.D. Va. 2012) cert. denied, 571 U.S. ____, 134 S. Ct. 681 (Dec. 2, 2013).

Last year, Judge Dalzell of the United States District Court for the Eastern District of Pennsylvania preliminarily and permanently enjoined enforcement of the Pennsylvania's in-state witness restriction imposed upon the circulation of nomination papers pursuant to 25 P.S. 2911(d), as applied to candidates for the Green and Libertarian parties of Pennsylvania.  *Green Party of Pennsylvania v. Aichele*, 89 F.Supp3d 723 (E.D. Pa. 2015).  Just this year, Judge Hall of the United States District Court for the District of Connecticut enjoined the in-state witness

restriction on the circulation of nomination petitions for candidates for both major and minor political parties. *See Wilmoth v. Merrill*, 3:16-cv-0223 (D. Conn., March 1, 2016); *Libertarian Party of Connecticut v. Merrill*, 3:15-cv-01851 (D. Conn., January 27, 2016).  And just seventeen (17) days ago, Judge Hornak of the United States District Court for the Western District of Pennsylvania, issued an emergency injunction on the in-state and voter registration requirement to circulate nomination petitions for referendum petitions which, in turn, rely on the rules for circulating primary petitions for the Republican and Democratic parties in Pennsylvania. *OpenPittsburgh.Org v. Wolosik*, 1:16-cv-1075 (W.D. Pa. August 5, 2016).

As in the cases cited above, the state residency and voter registration requirements imposed by N.J.S.A. § 19:23-11 impose a severe burden on plaintiffs' First Amendment rights because of the large number of persons excluded from participating in core political speech in the State of New Jersey, "cuts down the number of message carriers in the ballot-access arena without impelling cause." *Buckley*, 525 U.S. at 197.  In evaluating the constitutionality of an election law, "the rigorousness of [the court's] inquiry . . . depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).  When constitutional rights "are subjected to 'severe' restrictions, the regulation must be narrowly drawn to advance a state interest of compelling importance."  Id. (internal quotation marks and citation omitted).   Based on the Supreme Court's decision in <u>Buckley</u>, a restriction that drastically reduces the number of persons available to circulate petitions imposes a severe burden on First Amendment speech because it reduces or limits the ability to associate with potential supports.  Accordingly, strict scrutiny applies to judicial review of both the voter registration and in-state circulator restriction because of the vast number of persons prohibited from circulating nomination petitions in the State of New Jersey – over 320

million United States residents are prohibited by the challenged statute from circulating nomination petition in New Jersey, and an addition number of unregistered New Jersey residents are also prohibited from freely circulating nomination petitions – a number which constitutes a *per se* and unchallengeable severe restriction on rights guaranteed to plaintiffs' under the First and Fourteenth Amendments to the United States Constitution.

First and foremost, the United States Supreme Court expressly applied strict scrutiny on voter registration requirements imposed on the circulation of election petitions.  That, frankly is the end of the analysis – plaintiffs must prevail on their claims. *Buckley*, 525 U.S. at 197.

With respect to the challenged in-state witness restriction, Judge Dalzell in ruling Pennsylvania's in-state witness restriction invalid for the circulation of election petitions for candidates of political bodies in *Green Party of Pennsylvania*, explained that:

> "Our Court of Appeals has not considered the validity of the In-State Witness requirement.  In our July 31, 2014 Order we relied on the reasoning of the Fourth Circuit in *Judd* and held such residency requirements unconstitutional.  We do so again here.  We apply the strict scrutiny standard because the character and magnitude of the asserted injury outweighs the Commonwealth's interests as a justification for the burden it imposes.  The Commonwealth's residency requirement is not narrowly tailored to advance a state interest of compelling importance.  'As the law has developed…, a consensus has emerged that petitioning restrictions like the one at issue here are subject to strict scrutiny analysis.'"

*Green Party of Pennsylvania*,  89 F.Supp.3d at 740 *citing Judd*, 718 F.3d at 316-17.

Nearly every court to consider the constitutionality of an in-state residency requirement for election petition circulation has subjected the requirements to strict scrutiny because of the number of persons excluded from circulating referendum and election petitions by the challenged statutes .  See, e.g., *Citizens in Charge v. Gale*, 810 F.Supp.2d at 925; *Nader v. Blackwell*, 545 F.3d at 475; *Nader v. Brewer*, 531 F.3d at 1036; *Daien*, 711 F.Supp.2d at 1231 ; *Krislov*, 226 F.3d at 862; *Libertarian Party of Virginia v. Judd*, 718 F.3d at 317.  As in these cases, the in-

state residency and voter registration provision at issue in the present action undoubtedly places serious burdens on the First Amendment rights of the plaintiffs.  Indeed, it burdens the free speech rights of nearly everyone who participates, or wishes to participate, in the States's process for establishing who will appear on its primary election ballot, from which voters will select candidates for the general election ballot who they will ultimately elevate to important public office(s).  The scope and severity of these burdens require the Court to evaluate the challenged statutory provision under strict scrutiny.

1.      **The Burden on Proponents of Referendum & Petition Circulation.**

In *Meyer*, the Court explained that the circulation of a ballot initiative petition involves "the liberty to discuss publicly and truthfully all matters of public concern" at the core of the First Amendment.  *Meyer*, 486 U.S. at 414 (citation omitted).  Such discussion is inherent in the petition process:

> Although a petition circulator may not have to persuade signatories that a particular proposal should prevail to capture their signatures, he or she will at least have to persuade them that the matter is one deserving of the public scrutiny and debate that would attend its consideration by the whole electorate.  This will in almost every case involve an explanation of the nature of the proposal and why its advocates support it.

*Meyer*, 486 U.S. at 421.

Courts have recognized that provisions virtually identical to the challenged law reduce the number of eligible circulators available to circulate plaintiffs' referendum petitions undermining candidate speech in two ways:

> First, it limits the number of voices who will convey [the] message and the hours they can speak and, limits the size of the audience they can reach.  Second, it makes it less likely that [the referendum question] will garner the number of signatures necessary to place the matter on the ballot….

*Id.* at 422-23.  Additionally, the challenged provision "burdens [the] right to associate with a class of circulators."  *Krislov*, 226 F.3d at 860:

> Although the [New Jersey] provision does not go so far as to specifically prohibit [voters] from associating with individuals who are not residents of [New Jersey] . . ., it still substantially burdens this right of association by preventing the [candidates] from using signatures gathered by these circulators [without being witnessed by New Jersey residents] . . . . By doing so, the law inhibits the expressive utility of associating with these individuals because these potential circulators cannot [freely] invite voters [and potential voters] to sign [the candidate's] petitions . . . .

*Id*. at 861 (bracketed text inserted into the quote as necessary to conform to New Jersey facts).

As in *Meyer* and *Buckley*, the New Jersey residency requirement drastically reduces the number of persons, both volunteer and paid, available to circulate petitions," *Buckley*, 525 at 193.  In doing so, it severely burdens this important means of communication for referendum sponsors and limits the ability of plaintiff to associate with many potential supporters.

### 2.      The Burden on Circulators.

Because those seeking to circulate nomination petitions in New Jersey, such as plaintiffs, are the ones most directly engaging in the effort to persuade voters and potential voters of the value of a particular political party candidate, it follows that the in-state residency and voter registration requirement also gravely diminishes the free speech and association rights of out-of-state residents and unregistered New Jersey residents who wish to circulate nomination petitions in New Jersey.  In fact, many of the cases that have considered the constitutionality of in-state residency requirements have been filed and won by the circulators themselves.  *See e.g.,Daien*, 711 F.Supp.2d  1215,  *Nader v. Brewer*, 531 F.3d 1028, *Green Party of Pennsylvania v. Aichele*, 89 F.Supp3d 723.  *Wilmoth v. Merrill*, 3:16-cv-0223 (D. Conn. March 1, 2016) (granting emergency temporary restraining Order).

The challenged statutory provisions impact the free speech rights of out-of-state circulators in a number of ways.  First, it deprives them of the opportunity to persuade voters and potential voters in New Jersey of the viability and/or utility of the referendum question sought to

be placed on the general election ballot.  The difficulty and time consuming process of matching a willing out-of-state circulator with a willing in-state registered circulator to circulate referendum petitions at a time and place convenient to each is a time-consuming organizational difficulty to plaintiffs with limited organizational infrastructure which presents an added impairment to the use of willing out-of-state circulators.

Finally, the in-state residency and voter registration requirement burdens the circulators' right to associate with the voters of New Jersey, at the time and place of the circulators choosing. *See*, *Lerman v. Board of Education*, 232 F.3d 135, 143 (2nd Cir. 2000) (noting a circulator's right "to engage in interactive political speech and expressive political association across electoral district boundaries").  In sum, the free speech rights of out-of-state election petition circulators are severely burdened by New Jersey's in-state residency and voter registration requirements to circulate nomination papers.

### 3.    The Burden on Potential Signers.

Not only are petition circulators burdened by New Jersey's in-state and voter registration requirement for circulators of nomination petitions, those who would receive the information, the residents of the New Jersey are themselves similarly burdened.  "[T]he Constitution protects the right to receive information and ideas."  *Stanley v. Georgia*, 394 U.S. 557 (1969).  "This right is an inherent corollary of the rights of free speech and press that are explicitly guaranteed by the Constitution."  *Board of Educ., Island Trees Union Free School Dist, No. 26 v. Pico*, 457 U.S. 853, 867 (1982).  Depriving New Jersey residents of speech by out-of-state petition circulators educating them on potential political party candidates as a direct and proximate result of the in-state residency and voter registration restrictions directly burdens the voters and potential voters' own First Amendment rights by limiting their choice on the ballot.  "By limiting the choices

available to voters, the State impairs the voters' ability to express their political preference."

*Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979).

Accordingly, for all the foregoing reasons, the in-state and voter registration requirement imposed pursuant to N.J.S.A. § 19:23-11 imposes a severe restriction on First Amendment speech and is subject to strict scrutiny review by this Court.

**B.**   **N.J.S.A. § 19:23-11 is Not Narrowly Tailored to Advance a Compelling Governmental Interest Where Plaintiffs Agree to Submit to the Jurisdiction of the State of New Jersey**

Once this Court determines political speech has been burdened and that strict scrutiny must be applied; it is presumed that the law, or regulation, or policy is unconstitutional. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). The government then has the burden to **prove** that the challenged law is constitutional. *Federal Election Com'n v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 450-51 (2007). To withstand strict scrutiny, the government must prove that the law is necessary to achieve a compelling governmental interest. *Id.* If this is **proved**, the state must then demonstrate that the law is also narrowly tailored to achieve the asserted interest. *Id.*

In order to meet its burden of proof, the government "must do something more than merely posit the existence of the disease sought to be cured." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 664 (1994) (citing *Quincy Cable TV, Inc. v. FCC*, 768 F.2d 1434, 1455 (1985)). In other words, the government must factually **prove** the existence of the evil and that the asserted interest is necessary and narrowly tailored to remedy that evil. Under the requirement that any policy must be narrowly tailored to advance the asserted compelling governmental interest, defendants cannot forego a policy which is clearly less burdensome on free speech and association rights in favor of the policy challenged in this action.

16

To the extent that the in-state witness and voter registration requirements serve any compelling governmental interest, the restriction is not narrowly tailored to advance that interest. Defendant must show that the challenged restrictions are no broader in scope or burdensome than necessary to achieve its purpose. *Brewer*, 531 F.3d at 1037; *Krislov*, 226 F.3d at 863.  Defendant cannot show that permitting non-residents of New Jersey, or unregistered residents, to circulate nomination petitions free from the supervision of an in-state registered resident would increase the instances of fraud.  To establish the need to regulate non-resident circulators, defendant must prove that non-residents and/or unregistered voters of New Jersey are more likely to commit fraud then residents.  However, multiple federal courts have rejected the idea that non-resident circulators are inherently less honest.  *See, e.g.*, *Meyer*, 486 U.S. at 426; *Brewer*, 531 F.3d at 1037; *Yes on Term Limits v. Savage*, 550 F.3d 1023, 1029 (10th Cir. 2008). No federal court has ever accepted that a circulator's voter registration status implicates suspicion of dishonesty.

To the extent that defendant alleges that the in-state residency requirement is necessary to make sure that circulators are within the state's subpoena power, the courts in *Brewer*, *Yes on Term Limits*, *Chandler*, *Citizens in Charge*, *Perry*, *Libertarian Party of Virginia, Green Party of Pennsylvania*, *Libertarian Party of Connecticut*, and *Wilmoth* have all ruled that such an interest is not narrowly tailored, as states could require circulators to submit to their subpoena power before becoming a circulator.

Plaintiffs accept that the defendant and the State of New Jersey have a legitimate governmental interest in making sure that those who circulate nomination petitions are subject to the jurisdiction of the State of New Jersey in the event there is an investigation and/or prosecution of violations of New Jersey laws governing the circulation of nomination petitions. However, New Jersey's interest is more narrowly tailored by requiring out-of-state circulators to

submit to the jurisdiction of the State of New Jersey as a condition precedent to circulating nomination petitions within the state, rather than a blanket ban on out-of-state circulators.

Accordingly, the challenged statute is not narrowly tailored to effectuate the alleged governmental or regulatory interest. Just as a plaintiff in a federal lawsuit submits to the jurisdiction of a district court, even though the plaintiff may be a resident of another district or state, so too, submitting to the jurisdiction of a state as a condition precedent to circulating nomination petitions is both straightforward and less a drastic method to satisfy the defendant's state or regulatory interest than the challenged statutory restrictions.

## IV.    Plaintiffs' As-Applied Claims Are, In Fact, Valid & Not Merely Properly Plead.

In the event plaintiffs do not prevail on their facial claims, plaintiffs nevertheless must prevail on their as-applied claims. Plaintiffs were contracted to circulate nomination petition for Roque De La Fuente, a candidate seeking the Democratic Party nomination for President of the United States. Supreme Court jurisprudence make it clear that individual states have a minimal interest in imposing unnecessary regulations on candidates for President of the United States because individual states do not retain a compelling interest in having their own local election laws from having an impact on a national election. Flatly stated, not every election regulation which is allowed for state offices is permitted to interfere with the nation-wide election for President and Vice-President. In *Anderson v. Celebrezze*, 460 U.S. 780 (1983), the United States Supreme Court made clear that:

> [I]n the context of a Presidential election, state-imposed restrictions implicate a uniquely important national interest. For the President and the Vice President of the United States are the only elected officials who represent all the voters in the Nation. Moreover, the impact of the votes cast in each State is affected by the votes cast for the various candidates in other States. Thus, in a Presidential election, a State's enforcement of more stringent ballot access requirements…has an impact beyond its own borders. Similarly, the State has a less important interest in regulating

Presidential elections than state-wide or local elections, because the outcome of the former will be largely determined by voters beyond the State's boundaries….The pervasive national interest in the selection of candidates for national office, and this national interest is greater than any interest of an individual State.

*Anderson* at 794-795.

Judge Hall in *Wilmoth v. Merrill*, 3:16-cv-0223 (D. Conn., March 1, 2016), granted plaintiff Wilmoth's request for preliminary injunctive relief on an as-applied basis with respect to Wilmoth's circulation of election petitions for presidential candidates to avoid preexisting 2nd Circuit case law in *Maslow v. Board of Elections in City of New York*, 658 F.3d 291 (2011) (which upheld a petition circulator requirement in a case that did not address First Amendment analysis)  Judge Hall explains that The Second Circuit's decision in *Maslow* did not implicate First Amendment analysis with respect to out-of-state circulators. *Maslow's* analysis is limited by the facts to an analysis of exclusions at the local level, and not on the national level when considering in-state circulator requirements in connection with enrolled party requirements. Therefore in *Maslow* the facts before the court involved a ratio of excluded "voices" to non-excluded "voices" which is not so stark at the local level involving local in-state circulators as it is when a court, as here, must consider the exclusion of the entire U.S. populace outside the boarders of New Jersey under an analysis of a challenged restriction on out-of-state circulators and unregistered voters for statewide offices, and as applied to plaintiffs' case, the circulation of nomination petitions for presidential candidates.

Accordingly, Judge Hall's proper analysis of the 2nd Circuit's opinion in *Maslow* allowed Judge Hall to grant plaintiff Wilmoth the requested preliminary relief in Connecticut, a jurisdiction within the 2nd Circuit, as applied to the circulation of presidential nomination petitions in Connecticut.  With respect to the instant action, *Maslow* is certainly not binding

precedent on this Court and is not persuasive authority in the context of a constitutional analysis with respect to New Jersey's restriction on out-of-state circulators.

**V.      "Party Raiding" is Not Applicable to Instant Case**

While courts have recognized an interest in preventing "party raiding" that issue is simply not implicated in the instant action.  First, a state's interest against "party raiding" as explained by the United States Supreme Court, only implicates the state's right to place a reasonable deadline on the ability of members of one party to switch to another political party. *See Rosario v. Rockefeller*, 410 U.S. 752 (1973).  The Supreme Court has never articulated any rational that would permit this Court to characterize a citizen of another state presenting an election petition to an enrolled party member of New Jersey to give the New Jersey enrolled party member the opportunity to decide for his or herself  as to whether (or not) he or she wanted to support a particular candidate to be placed on their party's primary election ballot as an example of "party raiding" sufficient to prohibit out-of-state circulators through the boot-strapping of an in-state enrolled party registration requirement.  The only operative signatures on an election petition is that of the enrolled party member – not the person who presented the petition to them on a clipboard.

Furthermore, as applied to plaintiff Wilmoth, plaintiff is a dues paid member of the Michigan Democratic Party and circulated nomination petitions in New Jersey for a Democrat candidate for President of the United States.  Compl.  ¶¶ 7, 18-19   As a Michigan Democrat, plaintiff Wilmoth cannot be characterized as attempting to "raid" his own party.  Therefore, as applied to plaintiff Wilmoth, any alleged state interest in preventing "party raiding" is simply not applicable to Wilmoth's case.

Under strict scrutiny analysis, defendant has the burden to prove that the challenged law is constitutional. *Federal Election Com'n v. Wisconsin Right to Life, Inc.*, 551 U.S. 449 450-51 (2007). To withstand strict scrutiny, the government must prove that the law is necessary to achieve a compelling governmental interest and to meet this burden of proof, the government "must do something more than merely posit the existence of the disease sought to be cured." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 644 (1994). In other words, the government must factually prove the existence of the evil of "party raiding" as applied to the circulators of election petitions and that the asserted interest is necessary and narrowly tailored to remedy the evil. Any such proof must be considered after full discovery and is not an issue appropriate for consideration on a motion to dismiss under Fed.R.Civ.P. 12 (b)(6).

## CONCLUSION

For all the foregoing stated reasons, defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12 (b)(6) must be denied.

Dated:  August 22, 2016

   ___/s/ *Lawrence M. Otter*_____
LAWRENCE M. OTTER, ESQUIRE
**ATTORNEY FOR PLAINTIFFS**
PA ATTORNEY ID #31383
P.O. Box 575
Silverdale, PA  18962
267-261-2948
Email:  larryotter@hotmail.com


   _____/s/*Paul A. Rossi*_____
PAUL A. ROSSI, ESQUIRE
PA ATTORNEY ID # 84947
(admission *pro hac vice* pending)
**CO-COUNSEL FOR PLAINTIFFS**
IMPG Advocates, Inc.
873 East Baltimore Pike
Suite #705
Kennett Square, PA  19348
717.961.8978
Email:  Paul-Rossi@comcast.net

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that a true and correct copy of the foregoing

"Plaintiffs' Brief in Opposition to Defendant's Motion to Dismiss Complaint Pursuant to

Fed.R.Civ.P 12 (b)(6)" was served on this date on the following opposing counsel via the Court's

ECF system.

Christopher S. Porrino, Esq.                Alan C. Stephens, Esq.
Acting Attorney General of New Jersey    Deputy Attorney General
Attorney for Defendant.                     Attorney for Defendant
State of New Jersey                       State of New Jersey
R.J. Hughes Justice Complex           R.J. Hughes Justice Complex
25 Market Street., P.O. Box 112         25 Market Street, P.O. Box 112
Trenton, New Jersey  08625           Trenton, New Jersey  08625
Alan.Stephens@lps.state.nj.us
(609) 292-6123

Dated:  August 22, 2016               ___/s/ *Lawrence M. Otter*_____
                                LAWRENCE M. OTTER, ESQUIRE
                                *Attorney for Plaintiffs*