Paul A. Rossi, Esq.
Admitted *Pro Hac Vice*
IMPG Advocates, Inc.
316 Hill Street
Mountville, PA  17554
717.681.8344
Email:  Paul-Rossi@comcast.net

Larry M. Otter, Esq.
P.O. Box 575
Silverdale, PA  18962
267-261-2948
Email:  larryotter@hotmail.com

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ALEXANDER ARSENAULT, TRENTON POOL and ROQUE DE LA FUENTE,** | : |
| | : |
| | : **Civil Action** |
| **Plaintiffs,** | : |
| | : **No. 16-1854-PGS-DEA** |
| **v.** | : |
| | : **PLAINTIFFS'** |
| **TAHESHA WAY, in her official capacity as** | : **MEMORANDUM IN** |
| **The Secretary of State for the State of** | : **SUPPORT OF** |
| **New Jersey,** | : **PLAINTIFFS' MOTION** |
| | : **FOR SUMMARY** |
| **Defendant.** | : **JUDGMENT** |

# **TABLE OF CONTENTS**

Table of Contents…………………………………………………...………2

Table of Authorities…………………………..…………………………..…..3

I.      Introduction & Summary of the Argument………..……………………...……5

II.     Standard of Review……………………………………………………………7

III.    Argument……………………………………………………………....…9

        A.      Strict Scrutiny Analysis Applies to Review of N.J. Stat. Ann
                § 19:23-11 Voter Registration and Residency Requirement for
                The Circulation of New Jersey Political Party Nominating
                Petitions……………………………………………………..………9

        B.      New Jersey's Party Affiliation Requirement is "Immaterial"
                When Circulators are Members of the Same National Political
                Party Named on the Nominating Petition…………………………...14

        C.      Evidence Support Strict Scrutiny Analysis…………………………15

        D.      New Jersey's Challenged Residency Requirement for Nomination
                Petition Circulators is Not Narrowly Tailored to Advance a
                Compelling Governmental Interest………………………………..…17

IV.     Conclusion……………………………………………………………….20

Certificate of Service………………………………………………………...…21

Word Count Certification………………………………………………………22

# TABLE OF AUTHORITIES

## Cases

*Buckley v. Am. Const. Law. Found.*,
    525 U.S. 182 (1999)…………………………………………………..*passim*

*Burdick v. Takushi*,
    504 U.S. 428 (1992)…………………………………………………..17

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)…………………………………………………....7

*Citizens for Tax Reform v. Deters*,
    518 F.3d 375 (6th Cir. 2008)…………………………………………..…5

*Citizens in Charge v. Gale*,
    810 F.Supp.2d 916 (D. Neb. 2011)…………………………………..…11

*Daien v. Ysursa*,
    711 F.Supp.2d (D. Idaho 2010)……………………………………………11

*FEC v. Wisc. Right to Life*,
    551 U.S. 449 (2007)………………………………………..…………….8, 17

*Green Party of Pennsylvania v. Aichele*,
    89 F.Supp. 3d 723 (E.D. Pa. 2015)…………………………….……………12, 19

*Krislov v. Redour*,
    226 F.3d 851 (7th Cir. 2000)……………………………………………11, 12

*Libertarian Party of Connecticut v. Merrill*,
    2016 WL 10405920 (D. Conn., Jan.  26, 2016)………………………….....12

*Libertarian Party of Virginia v. Judd*,
    718 F.3d 308 (4th Cir. 2013)………………………………………...….12, 19

*Meyer v. Grant*,
    486 U.S. 414 (1988)…………………………………...…………….*passim*

*Nader v. Brewer*,
    531 F.3d 1028 (9th Cir. 2008)…………………………..……11, 12, 13, 19

*Nader v. Blackwell*,
    545 F.3d 459 (6th Cir. 2008)…………………………………………..11

*National Association for Gun Rights, Inc. v. Mangan*,
    No. 18-35010 (9th Cir. Aug. 12, 2019)………………………….…….13

*Quincy Cable TV, Inc. v. FCC*,
    768 F.2d 1434 (1985)………………………………………….....18

*Timmons v. Twin Cities Area New Party*,
    520 U.S. 351 (1997)…………………………………………………8

*Turner Broad Sys., Inc. v. FCC*,
    512 U.S. 622 (1994)……………………………………….…..18

*Wilmoth v Merrill*,
    2016 WL 829866 (D. Conn. March 1, 2016)………………………....12

*Yes on Term Limts v. Savage*,
    550 F.3d 1023 (10th Cir. 2008)……………………………………..19

## **Statutes & Rules**

Fed. R. Civ. P. 56(c)………………………………………………..……7

N.J. Stat. Ann. § 19:23-11……………………………………………….9

## I.     INTRODUCTION & SUMMARY OF THE ARGUMENT

In affirming an Ohio district court's holding that that a particular Ohio ballot access law was unconstitutional, Sixth Circuit Judge McKeague appropriately opened the court's opinion with a lyrical reminder of the apex position enjoyed by the First Amendment in the pantheon of rights and responsibilities enjoyed by citizens of this county:

> As with the law in general, the First Amendment is a jealous mistress. It enables the people to exchange ideas (popular and unpopular alike), to assemble with the hope of changing minds, and to alter or preserve how we govern ourselves.  But in return, it demands that sometimes seemingly reasonable measures enacted by our governments give way.

*Citizens for Tax Reform v. Deters*, 518 F.3d 375, 377 (6th Cir. 2008).

In evaluating in-state residency requirements for petition circulators, courts have nearly unanimously and unflinchingly set aside state laws which may locally appeal to the chauvinistic attitudes that citizens from other states have no business participating in their electoral process.  The First Amendment and the principles for which it stand is simply more important and is an agile weapon against outdated sensibilities of state chauvinism.  Simply stated, the State of New Jersey gave up the right to exclude United States citizens and residents from participating in its electoral process when in ratified the Constitution.

As this Court is well aware, this court initially dismissed Plaintiffs' complaint challenging New Jersey's requirement that petition circulators for

candidate nominating petitions must be registered voters of New Jersey enrolled in the political party named on the candidate's nominating petition on the novel theory that petition circulators who are not registered with New Jersey's affiliate of a national political party are somehow raiding their own political party. The Third Circuit, in reversing and remanding this case back to this court, made clear that: (1) strict scrutiny applies to the review of residency restriction imposed on political party candidate nominating petitions; and (2) a state political party is merely an affiliate of the national political party, such that, party members resident outside of New Jersey are still members of the same political and cannot "raid" their own party. *See*, Exhibit A, at Third Circuit Opinion, pp. 10-11. Subsequent to the Third Circuit's opinion in this case, Defendants' novel "party raiding" defense in support of the New Jersey voter registration requirement is no longer a valid defense as applied to Plaintiffs Arsenault and Pool's desire to circulate New Jersey nominating petitions to New Jersey members of the same political party with which they are affiliated and strict scrutiny applies to this court's review of the challenged statute. Accordingly, the statute can only survive Plaintiffs' constitutional challenge if Defendants' can show that the challenged statute is narrowly tailored to advance a compelling governmental interest. Defendants cannot make such a showing and, therefore, the challenged statute is unconstitutional.

Plaintiffs invite this court to join the overwhelming majority of courts that have struck down these offensive enactments against free speech and association. In support, Plaintiffs have developed an undisputed factual that Plaintiff Arsenault and Pool are willing to submit to the subpoena power of the State of New Jersey for purposes of any investigation and/or prosecution of any allegation of petition fraud, a scheme which district and courts of appeal have unanimously agreed more narrowly satisfies New Jersey's legitimate state interest in protecting the integrity of its elections processes than a blanket ban on out-of-state petition circulators.

Accordingly, the challenged statute is unconstitutional and Plaintiffs' motion for summary judgment must be granted.

## II.   STANDARD OF REVIEW

### 1.   Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)(quoting Fed. R. Civ. P. 56(c)).

### 2.   First Amendment Standard of Review

State regulation of petition circulation is reviewed under the following framework:

> When deciding whether a state election law violates First and
> Fourteenth Amendment associational rights, we weigh the character
> and magnitude of the burden the State's rule imposes on those rights
> against the interests the State contends justify that burden, and
> consider the extent to which the State's concerns make the burden
> necessary.  Regulations imposing severe burdens on Plaintiffs' rights
> must be narrowly tailored and advance a compelling state interest.
> Lesser burdens, however, trigger less exacting review, and a State's
> important regulatory interests will usually be enough to justify
> reasonable, nondiscriminatory restrictions.  No bright line separates
> permissible election-related regulation from unconstitutional
> infringements on First Amendment freedoms.

*Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358-59 (1997)(internal

quotation marks and citations omitted).  Where strict scrutiny applies, Defendants'

burden is "formidable."  *FEC v. Wisc. Right to Life*, 551 U.S. 449, 127 S.Ct. 2652,

2664 (2007).

The United States Supreme Court has applied strict scrutiny analysis to state

voter registration requirements to circulate of ballot initiative petitions, where, as

here, a law imposes substantial or severe burdens on petition circulation.  *See*,

*Buckley v. Am. Const. Law Found.*, 525 U.S. 182, 192 n.12 (1999) (identifying

"now settled approach" that state regulations imposing severe burdens on speech

are subject to strict scrutiny).

In evaluating ballot access cases, courts must "be vigilant . . . to guard

against undue hindrances to political conversations and the exchange of ideas."

*Buckley v. American Constitutional Law Foundation*, 525 U.S. 182, 192 (1999).

The Supreme Court has twice considered statutes that restrict who may circulate

election petitions in support of ballot access, and has twice invalidated the

restriction.    In *Meyer v. Grant*, 486 U.S. 414 (1988), the Court struck down

Colorado's prohibition on paid petition circulators.  Holding that the restriction

was "a limitation on political expression subject to exacting scrutiny" the Court

reasoned that the state had failed to justify the burden on advocates' free speech

rights.  *Meyer*, 486 U.S. at 420.  In *Buckley*, the Court invalidated a requirement

that petition circulators be registered voters of the state, holding that the

"requirement cuts down the number of message carriers in the ballot-access arena

without impelling cause."  *Buckley*, 525 U.S. at 197.  Accordingly, the voter

registration requirement of N.J.S.A. § 19:23-11 is flatly black letter law

unconstitutional under strict scrutiny analysis articulated by the Supreme Court.

## III.  **ARGUMENT**

### A.  **Strict Scrutiny Analysis Applies to Review of N.J. Stat. Ann. § 19:23-11 Voter Registration and Residency Requirement for the Circulation of New Jersey Political Party Nominating Petitions.**

N.J. Stat. Ann. § 19:23-11 requires that petition circulators of New Jersey

nominating petitions for political party candidates must be New Jersey registered

voters enrolled in the political party named on the petition.  The voter registration

requirement amounts to an in-state residency requirement because only New Jersey

resident may lawfully be registered voters in New Jersey.  Accordingly, the

challenged statute is properly considered a residency requirement under existing case law.

There now exists wide consensus among federal district and circuit courts of appeal that in-state residency requirements for the circulation of initiative, referendum and candidate petitions are unconstitutional.  Restrictions which decrease the number of available message carriers impose a severe restriction on "core" First Amendment speech and such restrictions are subject to strict scrutiny analysis and can only survive if the state demonstrates that the residency requirement is narrowly tailored to advance a compelling governmental interest. Every court to have considered this issue – including the Third Circuit and other district courts within this circuit – has held that the state's only legitimate interest in making sure that circulators are available for any investigation and/or prosecution of allegations of petition fraud are more narrowly advanced by requiring the out-of-state circulator to consent to the state's jurisdiction as a condition precedent to being allowed to circulate petitions in their state.

In evaluating ballot access cases, courts must "be vigilant . . . to guard against undue hindrances to political conversations and the exchange of ideas." *Buckley v. American Constitutional Law Foundation*, 525 U.S. 182, 192 (1999). The Supreme Court has twice considered statutes that restrict who may circulate election petitions in support of ballot access, and has twice invalidated the

restriction.   In *Meyer v. Grant*, 486 U.S. 414 (1988), the Court struck down

Colorado's prohibition on paid petition circulators.  Holding that the restriction

was "a limitation on political expression subject to exacting scrutiny" the Court

reasoned that the state had failed to justify the burden on advocates' free speech

rights.  *Meyer*, 486 U.S. at 420.  In *Buckley*, the Court invalidated a requirement

that petition circulators be registered voters of the state, holding that the

"requirement cuts down the number of message carriers in the ballot-access arena

without impelling cause."  *Buckley*, 525 U.S. at 197.

Although *Buckley* expressly reserved the question of whether residency

requirements like the one at issue in this action would be unconstitutional, *Buckley*,

525 U.S. at 197, every federal court to address in-state circulator restriction, where

the circulators are willing to place themselves under the jurisdiction of the state in

which they want to circulate election petitions has expressly relied on *Buckley* and

*Meyer* to hold such requirements unconstitutional in the context of both ballot

initiative and candidacy petitions.  *See Citizens in Charge v. Gale*, 810 F.Supp.2d

916 (D. Neb. 2011) (invalidating state residency requirement for circulators of

candidacy and ballot initiative petitions); *Nader v. Blackwell*, 545 F.3d 459 (6th

Cir. 2008) (invalidating state residency requirement for circulators of presidential

candidacy petitions); *Nader v. Brewer*, 531 F.3d 1028 (9th Cir. 2008) (same);

*Daien v. Ysursa*, 711 F.Supp.2d 1215 (D. Idaho 2010) (same); *Krislov v. Rednour*,

226 F.3d 851 (7th Cir. 2000) (invalidating residency requirement for circulators of petition for congressional candidacy petitions); *Libertarian Party of Virginia v. Judd*, 718 F.3d 308 (4th Cir. 2013) (invalidating state residency requirement for circulators of candidacy petitions).

The modern trend continues, in 2015, Judge Dalzell of the United States District Court for the Eastern District of Pennsylvania preliminarily and permanently enjoined enforcement of the in-state witness restriction imposed upon the circulation of nomination papers pursuant to 25 P.S. 2911(d), as applied to candidates for the Green and Libertarian parties of Pennsylvania. *Green Party of Pennsylvania v. Aichele*, 89 F.Supp3d 723 (E.D. Pa. 2015). Judge Hall of the United States District Court for the District of Connecticut enjoined the in-state witness restriction on the circulation of nomination petitions for candidates for both major and minor political parties. *Wilmoth v. Merrill*, 2016 WL 829866 (D. Conn., March 1, 2016); *Libertarian Party of Connecticut v. Merrill*, 2016 WL 10405920 (D. Conn., January 26, 2016). And, last year, the Third Circuit reversed and remanded dismissal of the complaint filed in this action instructing this court to apply strict scrutiny analysis.

In *Nader v. Brewer*, 531 F.3d 1028 (9th Cir. 2008), the United States Court of Appeals for the Ninth Circuit reviewed an Arizona requirement that circulators of candidate nominating petitions be residents of Arizona. *Id*. at 1036. The Ninth

Circuit concluded that that strict scrutiny analysis of Arizona's residency requirement was compelled by the Supreme Court's decision in *Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 194-95 (1999). As *Nader* noted, "[t]he Court held in *Buckley* significantly reducing the number the number of potential circulators imposed a severe burden on rights of political expression." *Nader*, 531 F.3d at 1036. Extending the rational from *Buckley* that laws severely burdening speech must be subject to strict scrutiny review, the Ninth Circuit in *Nader* properly concluded that the Arizona residency requirement was subject to strict scrutiny because it "exclude[d] from eligibility all persons who support the candidate but who…live outside the state of Arizona. *Id.*

Also using the rational of *Nader*, the Ninth Circuit recently invalidated Montana's registered-voter requirement that a political committee's designated treasurer be a registered Montana voter, a claim that Plaintiffs advanced in this action as part of their Amended Complaint, which the Ninth Circuit deemed "significantly less burdensome than the requirements at issue in *Buckley* and *Nader*" and invalidated under the less stringent exacting scrutiny. *See*, *National Association for Gun Rights, Inc. (NAGR). v. Mangan, et al.*, No. 18-35010, slip op. at pp. 33-34 (9th Cir. Aug. 12, 2019) . The Court in NAGR explained that:

> The particular First Amendment harm that restrictions on petition circulators pose is that they "limit the number of voices who will convey the initiative proponents' message and, consequently, cut

down the size of the audience proponents can reach."   *Buckley*, 525
U.S. at 194-95

*NAGR*, slip op. at p. 33.

**B.   New Jersey's Party Affiliation Requirement Is "Immaterial" When Circulators are Members of the Same National Political Party Named <u>on the Nominating Petition</u>.**

In addition to the voter registration requirement imposed by N.J. Stat. Ann. §

19:23-11, the statute requires that petition circulators must be members of the same

political named on the nominating petition.

In its opinion reversing this court's dismissal of Plaintiffs' complaint in this

action, the Third Circuit explained that:

> The plain language of N.J. Stat. Ann. § 19:23-11 makes clear that
> one's *residency* is the sine qua non for determining whether he or she
> may lawfully circulate nomination petition in New Jersey.
> Specifically, the relevant portion of the statute states that "[t]he person
> who circulates the petition shall be a registered voter *in this State*
> whose party affiliation is of the same political party named in the
> petition." N.J. Stat. Ann. § 19:23-11 (emphasis added in the original).
> New Jersey seeks to inoculate the "in this State" language by arguing
> that the statute, as a whole, should be more appropriately regarded as
> imposing a "party affiliation" restriction, not a residency
> restriction….This argument, however, is unavailing.  Wilmoth and
> Pool are dues-paying members of the Democratic and Republican
> Parties, respectively yet remain barred under N.J. Stat. Ann. § 19:23-
> 11 from circulating nomination petition in New Jersey.  Their party
> affiliations, in other words, are immaterial; instead, it is the fact that
> they reside out of state that prevents them from circulating petitions.
> Because New Jersey's residency requirement for circulators restricts
> "core political speech" strict scrutiny is warranted.

*See*, Exhibit A, at pp 10-11.

C.    <u>**Evidence Supports Strict Scrutiny Analysis**</u>

The record support the obvious fact that a law which prevents otherwise willing out-of-state professional circulators to circulate initiative and referendum petitions in Montana necessarily reduces the pool of circulators available to initiative and referendum proponents in Montana.  Literally, over 310,000,000 American citizens are prohibited from freely circulating initiative and referendum petitions in Montana.  The math, alone, triggers strict scrutiny analysis.

However, additional evidence  supports this necessary legal conclusion as well.  The record establishes that Plaintiff Arsenault (who was substituted for Plaintiff Wilmoth in Plaintiffs' Amended Complaint) is, like Wilmoth, a registered member of the Massachusetts Democratic party. Pl. Statement of Undisputed Facts, ¶4.  Trenton Pool is affiliated with the Texas Republican Party (Texas does not register party affiliations).  Pl. Statement of Undisputed Facts, ¶¶9, 10. Both Alex Arsenault and Trenton Pool are willing to submit to the subpoena authority of the State of New Jersey in order to freely circulate nomination petitions for their party's candidates in future New Jersey primary elections.  Pl. Statement of Undisputed Facts, ¶¶8, 14.

Both Plaintiffs Arsenault and Pool are professional circulators.  Pl. Statement of Undisputed Facts, ¶¶4, 5, 6, 12.  Both Plaintiffs Arsenault intend to bid for contracts to circulate nomination petitions for their party's candidates in

New Jersey in future primary election contests.  Pl. Statement of Undisputed Facts, ¶¶7, 13.  Arsenault has made at least 1 prior bid to secure a contract to circulate election petitions in New Jersey.  Pl. Statement of Undisputed Facts, ¶92.

The residency requirement imposed by New Jersey impairs Frist Amendment core political speech in a number of ways.  First in increases the cost of conducting or managing a petition drive for the circulators an candidates.  Pl. Statement of Undisputed Facts, ¶¶79, 80, 81.  Second, the in-state witness limits the ability of out-of-state professional circulators from being able to collect as many valid signature as quickly as possible.  Pl. Statement of Undisputed Facts, ¶¶82, 83, 84.  It is difficult to recruit new, in-state circulators who would not need to work with a witness.  Pl. Statement of Undisputed Facts, ¶¶90, 91.  Plaintiff Arsenault does not currently know of anyone in New Jersey who is willing to serve as an in-state witness.  Pl. Statement of Undisputed Facts, ¶103.

Plaintiff Arsenault has never failed to secure ballot access when he was able to tap into the national market of professional petition circulators to help secure the needed signatures to secure ballot access.  Pl. Statement of Undisputed Facts, ¶95.  New petition circulators, however, have a lower signature petition validity rate than trained professional circulators.  Pl. Statement of Undisputed Facts, ¶101.

16

Plaintiff Arsenault has never been accused of petition fraud.  Pl. Statement of Undisputed Facts, ¶100.  No one working for Plaintiff Arsenault has ever been accused of petition fraud.  Pl. Statement of Undisputed Facts, ¶100.

Defendant is able to contact other states and request information on their voter registration records, but has no direct access to voter registration records maintained by other states.  Pl. Statement of Undisputed Facts, ¶50.  Defendant is not aware of any instances of petition fraud in New Jersey.  Pl. Statement of Undisputed Facts, ¶54.  Defendant is not aware of any professional petition circulation firms in New Jersey.  Pl. Statement of Undisputed Facts, ¶53.  Defendant is not aware of any communication from either the New Jersey Republican or Democratic Party seeking to limit petition circulators to members of their political party.  Pl. Statement of Undisputed Facts, ¶55.

**D.    New Jersey's Challenged   Residency Requirement for Nomination Petition Circulators is Not Narrowly Tailored to Advance a Compelling <u>Governmental Interest</u>.**

Once this Court determines political speech has been burdened and that strict scrutiny must be applied; it is presumed that the law, or regulation, or policy is unconstitutional.  *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).  The government then has the burden to prove that the challenged law is constitutional.  *Federal Election Com'n v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 450-51 (2007).  To withstand strict scrutiny, the government must prove that the law is necessary to

achieve a compelling governmental interest.  *Id*.  If this is proved, the state must then demonstrate that the law is also narrowly tailored to achieve the asserted interest.  *Id*.

In order to meet its burden of proof, the government "must do something more than merely posit the existence of the disease sought to be cured."  *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 664 (1994) (citing *Quincy Cable TV, Inc. v. FCC*, 768 F.2d 1434, 1455 (1985)).  In other words, the government must factually prove the existence of the evil and that the asserted interest is necessary and narrowly tailored to remedy that evil.  In the instant action, there is no evidence of any prior instance of nomination petition fraud in New Jersey, so New Jersey does not have any right to regulate the process further.  *See.*  Pl. Statement of Undisputed Facts, ¶54.

Under the requirement that any policy must be narrowly tailored to advance the asserted compelling governmental interest, Defendants cannot forego a policy which is clearly less burdensome on free speech and association rights in favor of the policy challenged in this action.

Plaintiffs readily concede that New Jersey has a compelling governmental interest in the integrity of its election process including the circulation of initiative and referendum petitions.  As part of that compelling state interest, the State of New Jersey has a compelling governmental interest in ensuring compliance with its

election laws and the ability to subpoena anyone involved in the election process for any subsequent investigation, court proceeding and even prosecution.

To establish the need to regulate non-resident circulators, Defendants must prove that non-residents are more likely to commit fraud then residents. Defendants have produced no such evidence in this action.  The court in *Libertarian Party of Virginia v. Judd*, 881 F.Supp. 2d 719 (E.D. Va. 2012) rejected Defendants' citation to instances of non-residents engaging in voter fraud, this allegation does not support the contention that the fraud was committed because these individuals were non-residents.  In this action there is no allegation of prior fraud – at all.   Multiple federal courts have rejected the idea that a non-resident circulators are inherently less honest.  *See, e.g.*, *Meyer*, 486 U.S. at 426; *Brewer*, 531 F.3d at 1037; *Yes on Term Limits  v. Savage*, 550 F.3d 1023, 1029 (10th Cir. 2008). No federal court has ever accepted that a circulator's voter registration status implicates suspicion of honesty.

To the extent that Defendant alleges that the in-state residency requirement is necessary to make sure that circulators are within the state's subpoena power, the courts in *Brewer*, *Yes on Term Limits*, *Citizens in Charge v. Gale*, 810 F.Supp.2d 916 (D. Neb. 2011), *Libertarian Party of Virginia v. Judd*, 718 F.3d 308 (4th Cir. 2013)*, Green Party of Pennsylvania v. Aichele*, 89 F.Supp.3d 723 (E.D. Pa. 2015) have all ruled that such an interest is not narrowly tailored, as states

could require circulators to submit to their subpoena power before becoming a circulator.   Plaintiffs Arsenault and Pool, in this action have already attested that they are willing to submit to the jurisdiction and subpoena power of New Jersey as a condition to being permitted to freely circulate initiative and referendum petitions in New Jersey.  Pl. Statement of Undisputed Facts, ¶¶8, 14.

Accordingly, New Jersey's restriction that only New Jersey residents may lawfully circulate nomination petitions in New Jersey is not narrowly tailored to advance a compelling governmental interest.   Therefore, Plaintiffs' motion for summary judgment should be granted.

## IV.   **CONCLUSION**

For all the foregoing stated reasons, Plaintiffs' motion for summary judgment as to Counts I, II, III & IV should be granted.

Respectfully submitted,


Dated:  October 4, 2019                        __/s/ Paul A. Rossi_____
                                              Paul A. Rossi
                                              *Counsel for Plaintiffs*
                                              IMPG Advocates, Inc.
                                              316 Hill Street
                                              Mountville, PA  17554
                                              717.681.8344
                                              Paul-Rossi@comcast.net

**<u>CERTIFICATE OF SERVICE</u>**

Plaintiffs, by and through their undersigned legal counsel, hereby certify that on this date, they have caused a true and correct copy of the foregoing document to be filed with the Clerk of the Court for the United States District Court for the District of New Jersey by using the Court's CM/ECF system.

I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished through the CM/ECF system.

Dated:  October 4, 2019              s/ Paul A. Rossi_____
                                      Paul A. Rossi
                                      *Counsel to Plaintiffs*

**<u>WORD COUNT CERTIFICATION</u>**

Plaintiffs, by ad through their undersigned legal counsel, hereby certifies that the body of the foregoing document contains 3,973 words as determined by Microsoft Word's word count function.

Dated:  October 4, 2019              s/ Paul A. Rossi_____
                                      Paul A. Rossi
                                      *Counsel to Plaintiffs*