Paul A. Rossi, Esq.
Admitted *Pro Hac Vice*
IMPG Advocates, Inc.
316 Hill Street
Mountville, PA  17554
717.681.8344
Email:  Paul-Rossi@comcast.net

Larry M. Otter, Esq.
P.O. Box 575
Silverdale, PA  18962
267-261-2948
Email:  larryotter@hotmail.com

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ALEXANDER ARSENAULT, TRENTON POOL and ROQUE DE LA FUENTE,** | : <br> : <br> : **Civil Action** |
| **Plaintiffs,** | : <br> : |
| | : **No. 16-1854-PGS-DEA** |
| v. | : |
| | : **PLAINTIFFS'** |
| **TAHESHA WAY, in her official capacity as** | : **STATEMENT** |
| **The Secretary of State for the State of** | : **OF UNDISPUTED** |
| **New Jersey,** | : **MATERIAL FACTS** |
| | : |
| **Defendant.** | : |

**PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

**PARTIES**

1.   Alexander Arsenault is a resident of the Commonwealth of

Massachusetts.  Dkt. No. 43 at ¶8.

2. Alexander Arsenault is a registered voter in the Commonwealth of Massachusetts. Dkt. No. 43 at ¶8.

3. Alexander Arsenault is a registered member of the Democratic Party in the Commonwealth of Massachusetts in the City of Everett, Massachusetts. Exhibit B, Arsenault dep. at pp. 128:23-130:16.

4. Alexander Arsenault makes a living as a professional circulator of election petitions that collects valid signatures on petitions to place the name of candidates on election ballots. Dkt. No. 43 at ¶9.

5. Alexander Arsenault is the principal owner of Ballot Access Management. Dkt. No. 43 at ¶9.

6. Alexander Arsenault conducts his business as a professional circulator in multiple states across the United States. Dkt. No. 43 at ¶10.

7. Alexander Arsenault intends to bid for contracts to circulate election petitions for Democratic candidates seeking the 2020 Democratic Party nomination for President of the United States in the State of New Jersey. Dkt. No. 43 at ¶8.

8. Alexander Arsenault is willing to submit to the jurisdiction and sign any affidavit and/or other paper, subject to the penalty of perjury, placing himself within and consenting to the jurisdiction of the State of New Jersey for the purpose of any investigation and/or judicial procedure seeking to investigate and prosecute violations of New Jersey election law as a condition precedent to being permitted

to freely circulate nomination petitions in the State of New Jersey. Dkt. No. 43 at ¶18; Exhibit B, Arsenault Dep. at 117:23-118:10

9. Trenton Pool is a resident of the State of Texas. Dkt. No. 43 at ¶20.

10. Trenton Pool is a registered voter in the State of Texas. Dkt. No. 43 at ¶20.

11. Trenton Pool is affiliated with the Texas Republican Party. Dkt. No. 43 at ¶20.

12. Trenton Pool makes a living as a professional circulator of election petitions that collects valid signatures on petitions to place the name of candidates on election ballots. Dkt. No. 43 at ¶21.

13. Trenton Pool waned to circulate nominating petitions for Republican presidential candidates in New Jersey in 2016 but was prohibited from doing so because he does not know of and could not locate any in-state registered voter willing to serve as a witness of the nominating petitions that he wanted to circulate in 2016. Dkt. No. 43 at ¶21.

14. Trenton Pool is willing to submit to the jurisdiction and sign any affidavit and/or other paper, subject to the penalty of perjury, placing himself within and consenting to the jurisdiction of the State of New Jersey for the purpose of any investigation and/or judicial procedure seeking to investigate and prosecute violations of New Jersey election law as a condition precedent to being permitted

to freely circulate nomination petitions in the State of New Jersey. Dkt. No. 43 at ¶26.

15. Roque De La Fuente is a resident of the State of California. Dkt. No. 43 at ¶29.

16. Roque De La Fuente was a candidate for the 2016 Democratic Party nomination for President of the United States, although he was not a Democratic Party Candidate in New Jersey. Dkt. No. 43 at ¶29.

17. Roque De La Fuente appeared on the New Jersey general election ballot for President of the United States as the nominee of the American Delta Party. Dkt. No. 43 at ¶30.

18. In 2017, Roque De La Fuente enrolled as a member of the Republican Party. Dkt. No. 43 at ¶31.

19. Roque De La Fuente is an announced candidate for the 2020 Republican Party nomination for the office of President of the United States. Dkt. No. 43 at ¶32.

20. Roque De La Fuente intends to employ Plaintiff Pool to circulate his 2020 nominating petition to secure access to the 2020 New Jersey Republican presidential primary election ballot. Dkt. No. 43 at ¶33.

21. Tahesha Way is the Secretary of State of New Jersey. Dkt. No. 43 at ¶35.

22. Tahesha Way heads the New Jersey Division of Elections. Dkt. No. 43 at ¶35.

23. Tahesha Way is the chief elections official in the State of New Jersey. Dkt. No. 43 at ¶35.

24. Tahesha Way is charged with enforcement of N.J.S.A. §19:23-11.

25. Nominating petitions for candidates for state and federal office are filed with Tahesha Way.

### NEW JERSEY PRESIDENTIAL PRIMARY CANDIDATE NOMINATION PETITION CIRCULATION PROCESS

26. N.J.S.A. §19:23-11 prohibits anyone other than a registered voter of New Jersey from lawfully circulating a nominating petition for political party candidates in primary elections. N.J.S.A. §19:23-11.

27. N.J.S.A. §19:23-11 provides that every circulator of a nominating petition for a political party candidate in the New Jersey primary election "shall be a registered voter in this State whose party affiliation is of the same political party named in the petition." N.J.S.A. §19:23-11.

28. New Jersey currently recognizes only two political parties, the Republican and Democratic parties. Barber Dep. at 12:17-19.

29. The party affiliation requirement of N.J.S.A. §19:23-11 does not apply to the circulation of election petitions to place candidates for the Libertarian,

Green and Constitution parties on the general election ballot.  Dkt. No. 43 at ¶48; N.J.S.A. §19:23-6.

30. Presidential candidates for recognized political parties secure access to their party's presidential primary election by timely filing a nominating petition with Defendant containing at least 1,000 valid signature of registered voters enrolled in the same political party named in the petition.  Barber Dep. at p. 10, lines 7-12; Barber Dep. at 21:2-8.

31. Presidential nominating petitions require the candidate to record his/her name, party affiliation and contain the name, address and signature of registered voters enrolled in the same political party as the candidate and require the circulator of each petition page to execute a notarized circulator affidavit. Barber Dep. at 10:7-24.

32. The only document that a Republican or Democratic presidential candidate is required to file to secure access to their party's New Jersey presidential primary election is a nominating petition.  Barber Dep. at 14:6-11; Barber Dep. at 17:23-18:4.

33. A presidential candidate must be registered member of the political party named in the nominating petition.  Barber Dep. at 14:12-15.

34. Presidential candidates sign nominating petitions at the top of the nominating petition. Defendant does not verify out-of-state candidate party registrations. Barber Dep. at 15:14-16:3; Barber Dep. at 50:11-16.

35. In New Jersey, a circulator must be a registered voter, enrolled in the same party named on the nominating petition, at the time a signature is recorded on the nominating petition. Barber Dep. at 25:12-15.

36. Defendant checks the voter registration status of nominating petition circulators. Barber Dep. at 20:11-13.

37. Signatures filed by unregistered circulators are subtracted from the nominating petition. Barber Dep. at 20:14-21.

38. Defendant does not validate the validity of signatures recorded on nominating petitions. Barber Dep. at 21:13-18.

39. Signers of nominating petitions do not record the date they sign the nominating petition. Barber Dep. at 26:5-9.

40. Defendant has no way to determine if a circulator was a registered voter at the time a voter signed a nominating petition if the circulator registers to vote before the nominating petition is filed with Defendant. Barber Dep. at 26:10-15.

41. The 2020 New Jersey presidential primary election is scheduled for June, 2020. Barber Dep. at 27:19-23.

42. The last day to timely file a presidential nominating petition is 64 days before the primary election. Barber Dep. at 33:22-25.

43. New Jersey makes nominating petitions available in December or early January prior to a primary election, but a candidate is not required to use New Jersey's form as long as the form meets the requirements of Title 19. Barber Dep. at 26:17-25.

44. A candidate may start collecting signatures earlier than the date New Jersey makes the nominating petitions available. Barber Dep. at 27:3-11.

45. The New Jersey state voter registration computer database is called the "Statewide Voter Registration System." Barber Dep. at 29:18-25.

46. Donna Barber is the New Jersey Supervisor of Election Administration. Barber Dep. at 32:1-11.

47. Prior to the Statewide Voter Registration System, Defendant did not verify that a circulator was a registered voter, an issue which was left to a private challenge. Barber Dep. at p. 32:16-20.

48. The circulator affidavit made part of each nominating petition must be notarized. Barber Dep. at p. 33:1-17.

49. Registered voters must attest to U.S. citizenship without the need to notarize their voter registration application. Barber Dep. at 35:7-36:8.

50. Defendant is able to contact other states and request information on voter registration records, but has no direct access to voter registration records kept by other states. Barber Dep. at 38:12-41:13.

51. Out-of-state circulators may only collect signatures on a nominating petition if an in-state New Jersey registered voter enrolled in the same party named on the nominating petition witnesses the signatures being signed on the nominating petition. Barber Dep. at 46:2-19.

52. Only a New Jersey registered voter who is enrolled in the same party named on the nominating petition may lawfully execute the circulator affidavit. Barber Dep. at 46:2-19.

53. Defendant is not aware of any professional petition circulator firms within the State of New Jersey. Barber Dep. at 48:11-15.

54. Defendant is not aware of any instances of signature fraud relating to petition circulators gathering signatures for nominating petitions in New Jersey. Barber Dep. at 54:5-8.

55. Defendant is not aware of any communication from either the Republican or Democratic parties that they want to limit the circulation of nominating petitions to enrolled party members. Barber Dep. at 56:9-13.

## **PETITION CIRCULATORS**

56. Arsenault owns and runs Ballot Access Management, a single member LLC. Exhibit B, Arsenault Dep. at 25:16-26:10.

57. Arsenault employs independent contractors through Ballot Access Management to collect signatures for various ballot initiatives and pays them per signature. Exhibit B, Arsenault Dep. at 39:21-40:8.

58. Independent contractors working for Ballot Access Management make between $1.50 per signature to $10.00 per signature. Exhibit B, Arsenault Dep. at 43:12-24.

59. Arsenault charges clients approximately $2.50 more per signature if a state has residency requirement for circulators. In most instances where a state has a residency requirement, Arsenault pairs professional circulators with state residents to gather signatures. Exhibit B, Arsenault Dep. at 48:7-23.

60. The additional charge of $2.50 per signature covers the cost of paying state residents and the additional organizational strain of organizing twice as many people. Exhibit B, Arsenault Dep. at 56:10-14.

61. When a professional petitioner is paired with a resident petitioner, the resident will hold the clipboard and collect signatures and the professional will do the talking. Exhibit B, Arsenault Dep. at 48:10-16.

62. Resident petitioners are less expensive because unlike professional out-of-state petitioners, their housing and travel do not need to be covered. Exhibit B, Arsenault Dep. at 56:23-57:9. But, resident petitioners are not as reliable as professional petitioners. Exhibit B, Arsenault Dep. at 57:3-9.

63. Arsenault recruits resident petitioners through advertisement on Craigslist and referral. Exhibit B, Arsenault Dep. at 63:1-6.

64. The cost of running advertisements for resident petitioners is not substantial. Exhibit B, Arsenault Dep. at 64:3-9.

65. Arsenault pays resident petitioners between $12 and $15 per hour. Exhibit B, Arsenault Dep. at 100:13-14.

66. On average, a resident petitioner collects 200-300 signatures in a week and a professional petitioner collects 300-500. Exhibit B, Arsenault Dep. at 65:11-25.

67. In 2018 Arsenault's company made approximately $120,000 and in 2017 it made approximately $170,000. Exhibit B, Arsenault Dep. at 67:13-22.

68. To make a profit of $170,000, Arsenault's gross income is approximately $600,000. Exhibit B, Arsenault Dep at 68:11-15.

69. Arsenault has never circulated a nomination petition in New Jersey, and he is not currently contracted to circulate one. Exhibit B, Arsenault Dep. at 73:14-17.

70. Arsenault would charge approximately $15,000 to run a petition drive in New Jersey. Exhibit B, Arsenault Dep. at 76:2-4.

71. Without the circulator residency requirement, Arsenault would charge approximately $10,000 to run a petition drive in New Jersey. Exhibit B, Arsenault Dep. at 91:5-6.

72. Arsenault has been able to successfully transfer the extra cost of hiring resident petitioners to his clients' campaigns. Exhibit B, Arsenault Dep. at 98:6-8.

73. Over the past two years, Arsenault has taken more of managerial role instead of personally circulating petitions. Exhibit B, Arsenault Dep. at 82:19-22.

74. Compared to other states, New Jersey does not have a high signature requirement to get on the ballot in a presidential primary election. Exhibit B, Arsenault Dep. at 88:21-89:14.

75. Arsenault will generally not circulate a petition if the signature requirement is less than 1,000 because it does not make business sense. Exhibit B, Arsenault Dep. at 161:19-162:5.

76. At times Arsenault will consider giving a client a discount, but it is purely a business decision. Exhibit B, Arsenault Dep. at 136:3-21.

77. Arsenault would not collect signatures in New Jersey for free. Exhibit B, Arsenault Dep. at 152:20-22.

78. Were Arsenault to attempt recruiting resident petitioners in New Jersey, he would advertise on Craigslist and use referrals as he did in Maine. Exhibit B, Arsenault Dep. at 159:3-11.

### Impact of Residency Requirement on First Amendment Speech

79. Circulating petitions and managing petition drives in jurisdictions that impose residency requirements increase the cost of petitions drives. Exhibit B, Arsenault Dep. at 11:20-13:14.

80. Residency requirement require that an out-of-state professional petition circulator must be paired to an in-state witness, who must also be paid, such that, it effectively doubles the cost to secure each signature. Exhibit B, Arsenault Dep. at 11:20-13:14; 47:5-50:2; 55:22-57:18

81. In 2016, the in-state witness program cost $60,000. Exhibit B, Arsenault Dep. at 11:20-13:14.

82. In-state witnesses sometime do not show up for work, which impedes the professional out-of-state circulator from being able to do their work. Exhibit B, Arsenault Dep. at 11:20-13:14.

83. In-state witnesses sometimes leave early, which impedes the professional out-of-state circulator from being able to do their work.. Exhibit B, Arsenault Dep. at 11:20-13:14.

84. In-state witnesses sometimes take extended breaks, which impedes the professional out-of-state circulator from being able to do their work..  Exhibit B, Arsenault Dep. at 11:20-13:14.

85. Arsenault supports himself entirely from his ballot access petitioning business.  Exhibit B, Arsenault Dep. at 24:10-25:5.

86. Arsenault has worked as an independent petition circulator in several states.  Exhibit B, Arsenault Dep. at 27:11-28:17.

87. The vast majority of petition work is done by traveling professional petition circulators.  They travel from state to state providing the labor pool for candidates seeking ballot access.  Exhibit B, Arsenault Dep. at 28:11-29:8.

88. Professional petition circulators are part of a national interstate market.  Exhibit B, Arsenault Dep. at 33:6-34:13.

89. Arsenault manages a core group of 10 professional petition circulators who are residents of Massachusetts.  Exhibit B, Arsenault Dep. at 38:4-8; 69:18-71:9.

90. Training time for a professional petition circulator varies from a few hours to a day or two.  Exhibit B, Arsenault Dep. at 40:25-41:13..

91. Only about 1 in 10 people become successful petition circulators.  Exhibit B, Arsenault Dep. at 41:14-43:9; 64:10-65:10.

92. Arsenault made a prior bid for work in New Jersey.  Exhibit B, Arsenault Dep. at 73:24-76:5.

93. Arsenault is interested in placing bids to secure New Jersey petitions for Democratic presidential candidates.  Exhibit B, Arsenault Dep. at 76:8-77:9; 103:8

94. Signature gatherers earn between $1.50 to $10.00 per signature. Exhibit B, Arsenault Dep. at 43:10-44:21.

95. Arsenault has never failed to secure petition ballot access when he was able to tap into the national market of professional petition circulators. Exhibit B, Arsenault Dep. at 45:24-47:4.

96. Maine's initiative petition to place "rank-choice" voting failed to recruit enough in-state voters to place the initiative on the ballot, so they hired out-of-state professional circulators supplemented by in-state witnesses.  Exhibit B, Arsenault Dep. at 57:19-62:11.

97. Difficult to find residents to work outside in the cold with professional circulators.  Exhibit B, Arsenault Dep. at 86:8-87:4.

98. Arsenault has never had an in-state resident volunteer to be a witness. Exhibit B, Arsenault Dep. at 101:10-102:6.

99. Residency requirement is a factor in Arsenault's negotiations to secure contracts with 2020 Democratic presidential candidate to circulate their petitions in New Jersey.  Exhibit B, Arsenault Dep. at 104:1-107:22.

100. Arsenault has never been alleged to have engaged in petition fraud.  Exhibit B, Arsenault Dep. at 124:9-12; 124:13-125:7.

101. New petition circulators have a lower validity rate and are usually quickly fired.  Exhibit B, Arsenault Dep. at 140:9-142:12.

102. Arsenault does not know anyone in New Jersey who could serve as a witness.  Exhibit B, Arsenault Dep. at 160:17-21.

                                  Respectfully submitted,

Dated:  October 4, 2019         __/s/ Paul A. Rossi_____
                                            Paul A. Rossi
                                            *Counsel for Plaintiffs*
                                            IMPG Advocates, Inc.
                                            316 Hill Street
                                            Mountville, PA  17554
                                            717.681.8344
                                            Paul-Rossi@comcast.net

## **CERTIFICATE OF SERVICE**

Plaintiffs, by and through their undersigned legal counsel, hereby certify that on this date, they have caused a true and correct copy of the foregoing document to be filed with the Clerk of the Court for the United States District Court for the District of New Jersey by using the Court's CM/ECF system.

I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished through the CM/ECF system.

Dated:  October 4, 2019                                  s/ Paul A. Rossi_____
                                                                               Paul A. Rossi
                                                                               *Counsel to Plaintiffs*