Lawrence M. Otter, Esq.
P.O. Box 575
Silverdale, PA  18962
267-261-2948
Email:  larryotter@hotmail.com

Paul A. Rossi, Esq.
Admitted *Pro Hac Vice*
IMPG Advocates, Inc.
316 Hill Street
Suite 1020
Mountville, PA  17554
717.681.8344
Email:  Paul-Rossi@comcast.net

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **ALEXANDER ARSENAULT, TRENTON POOL and ROQUE DE LA FUENTE,** | : | |
| | : | |
| | : | **Civil Action** |
| **Plaintiffs,** | : | |
| | : | **No. 16-1854-PGS-DEA** |
| **v.** | : | |
| | : | **PLAINTIFFS'** |
| **TAHESHA WAY, in her official capacity as** | : | **REPLY IN** |
| **The Secretary of State for the State of** | : | **SUPPORT OF** |
| **New Jersey,** | : | **PLAINTIFFS' MOTION** |
| | : | **FOR SUMMARY** |
| **Defendant.** | : | **JUDGMENT** |

# **TABLE OF CONTENTS**

Table of Contents…………………………………………………………...………2

Table of Authorities……………………………………………………….…...3

I.     Introduction……………………………………………………………4

II.    Argument…………………………………………………………6

     A.    Strict Scrutiny Review Applies & Challenged Statute if Not Narrowly Tailored to Advance New Jersey's Stated Compelling Interests………………………………………………………6

     B.    Efficacy of the Out-of -State Circulator Ban Does Not Save Challenged Statute…………………………………………...12

     C.    Challenged Statute Significantly Impairs Plaintiffs' First and Fourteenth Amendment Rights………………………………...…13

III.   Conclusion…………………………………………………………14

Certificate of Service……………………………………………………...…16

Word Count Certification………………………………………………....16

# TABLE OF AUTHORITIES

## Cases

*Libertarian Party of Virginia v. Judd*,
    718 F.3d 308 (4th Cir. 2013)……………………………………...…*passim*

*Wilmoth v. Secretary of State of New Jersey*,
    No. 17-1925 (3rd Cir. April 19, 2018)………………………………...*passim*

## Statutes and Rules

U.S. CONST. Art. VI, §1……………………………………………………..12

U.S. CONST. Amend. I………………………………………………………*passim*

U.S. CONST. Amend. XIV………………..…………………………………*passim*

Rule 12 Fed.R.Civ.P.……………………………………………………...………6

N.J. Stat. Ann. § 19:23-11………………………………………..………...8

N.J. Stat. Ann § 19:34-2……………………………………………...…8

N.J. Stat. Ann § 19:34-26……………………………………………….8

N.J. Stat. Ann § 19:34-54…………………………………………….....8

N.J. Stat. Ann § 19:34-55…………………………………………….....8

N.J. Stat. Ann § 19:34-56……………………………………….....……8

## I.  __INTRODUCTION__

Most of Defendant's arguments in response to Plaintiffs' motion for summary judgment as noted in Plaintiffs' response to Defendants' motion for summary judgment have been resolved against Defendant by the United States Court of Appeals for the Third Circuit's reversal of this Court's dismissal of Plaintiffs' complaint in the above captioned action.  In reversing this Court's dismissal of Plaintiffs' complaint in the above captioned action, the United States Court of Appeals for the Third Circuit instructed this Court to apply strict scrutiny analysis to the adjudication of Plaintiffs' challenge which prevents any further argument that the challenged statute imposes anything less than a severe impairment to First Amendment rights.   Since strict scrutiny applies to the adjudication of state imposes residency requirements to circulate election petitions, all that is left to litigate is whether or not the challenged residency requirement is narrowly tailored to advance a compelling governmental interest.   Every federal district and circuit court of appeals to have considered the issue have held that requiring out-of-state circulators to submit to the jurisdiction of the state for any subsequent investigation and prosecution of any allegation of election petition fraud as a condition to freely circulate election petitions is a more narrow means to

advance a state's legitimate interest in protecting against petition fraud than a blanket ban on out-of-state circulators.

Furthermore, the rest of Defendant's responses have been rejected by every federal district court and every circuit court of appeals in unanimously ruling that state residency requirements to circulate election petitions are unconstitutional and cannot survive strict scrutiny analysis where a state can more narrowly require out-of-state circulators to submit to the jurisdiction of the state for any subsequent investigation and prosecution of any allegation of election petition fraud.  Also, New Jersey's blanket residency requirement is not narrowly tailored to protect against Defendant's made-up extension of the "party-raiding" doctrine to petition circulators hired by a candidate to circulate to members of the candidate's own political party, because even assume the "party-raiding" doctrine can be extended to mere petition circulators, the Third Circuit termed Defendants' argument immaterial because each out-of-state plaintiff seeks to circulate petitions to members of their own political party in New Jersey.  In other words, a Massachusetts Democrat cannot conduct a raid against the New Jersey Democratic Party.  Likewise, a Texas Republican cannot conduct a raid against the New Jersey Republican Party.

. Accordingly, Defendant's response in opposition to Plaintiffs' motion for summary judgment is wholly without merit and Plaintiffs' pending motion for summary judgment must be granted.

## II.   **ARGUMENT**

### A.   **Strict Scrutiny Review Applies & Challenged Statute is Not Narrowly Tailored to Advance New Jersey's Stated Compelling Interests**.

As noted above in the Introduction, most of the arguments advanced by Defendant in their response is foreclosed by the decision of the United States Court of Appeals for the Third Circuit's decision reversing this Court's dismissal of Plaintiffs' claims on Defendant's Rule 12 motion to dismiss.  It is now the law of this case that strict scrutiny applies.  Accordingly, Defendant is foreclosed advancing the argument in their response brief that the challenged residency requirement imposes anything other than a severe burden on rights guaranteed to Plaintiffs under the First and Fourteenth Amendments to the United States Constitution. *See*, Def. Response Br. at pp.3-4.  As properly explained by the Third Circuit:

> The plain language of N.J. Stat. Ann. § 19:23-11 makes clear that one's *residency* is the sine qua non for determining  whether he or she may lawfully circulate nomination petitions in New Jersey.  Specifically, the relevant portion of the statute states that "[t]he person who circulates the petition shall be a registered voter *in this State* whose party affiliation is of the same political party named in the petition."  N.J. Stat. Ann. § 19:23-11 (emphasis added).  New Jersey seeks to inoculate the "in this State" language by arguing that the statute, as a whole,

should be more appropriately regarded as imposing a "party affiliation" restriction, not a residency restriction…This argument, however, is unavailing. Wilmoth and Pool are dues-paying members of the Democratic and Republican Parties, respectively, yet remain barred under N.J. Stat. Ann. § 19:23:11 from circulating nomination petitions in New Jersey. Their party affiliations, in other words, are immaterial; instead, it is the fact that they reside out of state that prevents them from circulating petitions. Because New Jersey's residency requirement for circulators restricts "core political speech," strict scrutiny review is warranted.

*Wilmoth v. Secretary of State of New Jersey*, Slip Op. at 9-11, No. 17-1925 (3rd Cir. April 19, 2018).

Accordingly, the law of this case is that strict scrutiny review applies to the adjudication of Plaintiffs' claims. Plaintiffs concede, as have all previous successful plaintiffs challenging out-of-state circulator bans that were struck down as unconstitutional, that the State of New Jersey's interest against petition fraud is a compelling governmental interest. However, under strict scrutiny review, out-of-state circulators bans have failed because a blanket ban on out-of-state circulators is not narrowly tailored to advance the state's asserted interest. *See e.g., Libertarian Party of Virginia v. Judd*, 718 F.3d at 317-318.

Plaintiffs Arsenault and Pool have agreed to submit to the subpoena power of the State of New Jersey as a condition to freely circulate election petitions within New Jersey. *See*, Joint Statement of Undisputed Facts ¶¶ 7, 13. Further, even absent the willingness of Plaintiffs in this action to freely submit to the jurisdiction of New Jersey, the state could, as a more narrowly tailored means to protect both its stated

interest against fraud, simply require that out-of-state circulators submit to the jurisdiction of New Jersey as a condition precedent to being permitted to freely circulate nomination petitions for major party candidates in New Jersey.

The State of New Jersey has produced no evidence that out-of-state circulators submitting to the subpoena power of New Jersey is not a workable and less restrictive method to make sure that out-of-state circulators are available to respond to any questions that may arise after petitions are filed with the state.   Furthermore, the State of New Jersey has a whole raft of criminal laws under which any petition circulator, both resident and non-resident subject to the jurisdiction of New Jersey, can be prosecuted for any allegation of petition fraud.  *See*, N.J. Stat. §§ 19:34-2, 26, 54, 55 and 56.  Accordingly, requiring out-of-state petition circulators to submit to the jurisdiction and subpoena powers of the State of New Jersey as a condition precedent to being permitted to freely circulate nomination petition in New Jersey is a more narrow tailored means to protect the stated interests of New Jersey to protect against petition fraud than the blanket prohibition against out-of-state petition circulators.  Therefore, the challenged statute fails under the required strict scrutiny analysis.

Defendant's response argument that the challenged statute advances the State's interest against "party raiding" (Def. Response Br. at pp. 5-8) is also foreclosed by the facts of this case and the Third Circuit's opinion reversing this

Court's dismissal of Plaintiffs' claims.  The evidence in this action is conclusive that both Plaintiff Arsenault and Plaintiff Pool are affiliated with the Democratic and Republican parties, respectively.  *See*, Exhibit A (Alex Arsenault's Massachusetts voter registration card showing he is a registered Democrat – timely produced to Defendant's counsel and used by Defendant's counsel in the deposition of Plaintiff Arsenault);  Joint Statement of Undisputed Facts ¶¶8-10 (Texas, does not register voters by political party, but Plaintiff Pool affiliates with the Republican Party in Texas and votes in the Texas Republican Primary elections).  As this Court should uniquely understand, State political parties are mere affiliates of the nation party. Accordingly, the more narrow protection against "party raiding" under strict scrutiny review is to simply require out-of-state circulators to affirm that they are affiliated with the same political party as the candidate named in the nomination petition. Accordingly, the challenged statute is not narrowly tailored to protect the state's alleged interest against "party raiding."

In a similar vein, the associational interest of the political parties is not at issue in this case because Plaintiffs' are members of their respective political parties. Furthermore, Defendant has produced no evidence that either the Republican or Democratic Parties have asserted that they want to forbid party members from other states to circulate petitions for their candidates.  Defendants cite no case which supports the proposition that a state has any interest, let alone a compelling interest,

in preventing a Texas Republican from circulating an election petition for a New Jersey Republican or Republican presidential candidate in New Jersey and who has asked the Texas Republican to circulate his or her petition to members of the Republican Party in New Jersey; or a Massachusetts Democrat from circulating a nomination petition for a New Jersey Democrat or Democratic presidential candidate to members of the Democratic Party in New Jersey.  Furthermore, as noted above the Third Circuit has labeled Defendant's affiliation (and, by extension, the close related associational interests) to be "immaterial." *Wilmoth*, at slip op. p. 11.

Defendant's response brief argues that evidence has been put forward in support of the residency requirement because: "when someone registers to vote, his or her information is entered into the SVRS (JSUMF ¶44).  Notably, which the SVRS serves to verify the party affiliation of a New Jersey registered voter who wishes to circulate a nomination petition for a presidential candidate, such information is not available through the SVRS for an out-of-state individual."  Def. Response Br. at p.4   However, Defendant's argument is constitutionally meaningless.

First, no federal court has ever ruled that a state can limit rights guaranteed under the First Amendment based on the perceived limits of their internal database to provide  identification of the individual seeking to engage in "core" political speech within their state.   Second, out-of-state presidential candidate's party

affiliation is not in the SVRS system either, and New Jersey is happy to accept the affirmation of the presidential candidate that they are members of the political party from whom they seek the nomination – an out-of-state presidential candidate need only record their party affiliation on the nomination petition for New Jersey to accept their qualification to seek New Jersey delegates and alternate delegates to their party's nation nominating convention. *See*, Plaintiffs' Statement of Undisputed Facts at ¶¶30-34. It is, therefore, specious to argue that when New Jersey is not bothered by the fact that the actual candidate's party affiliation cannot be verified by the SVRS system that it poses some insurmountable bar to a mere out-of-state petition circulator, hired by that out-of-state candidate, to circulate their nomination petitions in New Jersey – if an affirmation (including even a sworn affirmation subject to criminal penalty upon a false statement) by a candidate is sufficient to establish party affiliation in New Jersey, such must be permitted under strict scrutiny analysis for an out-of-state petition circulator.       Third, Defendant has admitted that Defendant has the ability to contact other states to verify the registration status of out-of-state voters. *See*, Plaintiff's Statement of Undisputed Facts at ¶50. And Defendant has not provided any evidence that they cannot obtain the information necessary to establish the party affiliation of the out-of-state circulator within the time frame provided by statute.

Lastly, at minimum, an out-of-state petition circulator may produce a voter registration card, or some other state document showing the petition circulator's party affiliation which, as an official state documents, Defendant is required to accept as conclusive evidence of the party affiliation of the out-of-state petition circulator under the Full Faith and Cred Clause of the United States Constitution. *See*, U.S. CONST. Art. VI, §1.

Also, as an aside, no other state has the party affiliations of out of state voters in their own state database and that has never been recognized by any court as a basis to support a blanket out-of-state residency ban for petition circulators for party nominees in closed primary elections.  Accordingly, the challenged statute cannot survive strict scrutiny analysis for any of state interests asserted by Defendant in its response to Plaintiffs' motion for summary judgment.

## B.   Efficacy of the Out-of-State Circulator Ban Does Not Save Challenged Statute.

Defendant's reply argument that the challenged ban has been successful does not protect the challenged statute from strict scrutiny review.  *See generally*, Def. Response Br. "Point 1" at pp. 2-6.

In fact, as explained in Plaintiffs' own response to Defendants' motion for summary judgment, in *Libertarian Party of Virginia* the Fourth Circuit expressly assumed that Virginia's out-of-state circulator ban for candidate petitions was effective in preventing petition fraud.  *Id*. at 317-18 (explaining that: "The more

substantial question, and the crux of this appeal, is whether the Commonwealth's enactment banning all nonresidents from witnessing nominating petitions – a measure we presume to be effective in combatting fraud – is, notwithstanding its efficacy, insufficiently tailored to constitutionality justify the burden it inflicts on the free exercise of First Amendment rights."). *Id*. The only analysis under strict scrutiny review whether or not the state can achieve the same protection of its interests through a less restrictive impairment of First Amendment rights. As applied to residency restrictions, every federal district and circuit court of appeals has found that submission to the jurisdiction's subpoena power is a more narrowly tailored means to achieve the state's interest against the threat of petition fraud. Accordingly, the fact the a more restrictive law is effective is a wholly misplaced argument, and an attempt to evade the strict scrutiny review mandated in this case by the Third Circuit.

### C.    Challenged Statute Significantly Impairs Plaintiffs' First and Fourteenth Amendment Rights.

Defendant is foreclosed by the Third Circuit's opinion reversing this court's dismissal of Plaintiffs' claims from arguing in Defendant's response brief to Plaintiff's motion for summary judgment that the impairment imposed by the challenged statute is anything other than a severe impairment of Plaintiffs' rights. Once a court determines that strict scrutiny review is warranted the severity of the

burden to rights guaranteed to Plaintiffs' under the First and Fourteenth Amendment is conclusive and settled.  Defendants' argument that:

> "New Jersey only requires presidential nomination candidates in closed primary elections to obtain 1,000 signatures. (JSUMF ¶42). Most states have much higher signatures requirements.  (JSUMF ¶73). The low signature requirement, high population of registered Democrats and Republicans in New Jersey, and the long amount of time given to gather signatures make any burdens associated with the residency requirement...minimal."

Is no longer available once the Third Circuit has established that strict scrutiny applies to the adjudication of Plaintiffs' claims because the Third Circuit has already established that the residency requirement imposes a severe burden on rights guaranteed to Plaintiffs under the First and Fourteenth Amendments to the United States Constitution.

Accordingly, Defendant's response argument that the challenged statute does not significantly burden Plaintiffs' rights must be rejected under the law of this case, as set forth by the strict scrutiny review mandated by the Third Circuit.

## III.   <u>CONCLUSION</u>

For all the foregoing stated reasons and those set forth in Plaintiff's Memorandum in Support of Plaintiffs' Motion for Summary Judgment, Plaintiffs' motion for summary judgment must be granted.

Respectfully submitted,

Dated: November 8, 2019

/s/ Lawrence M. Otter, Esq.

_____

LAWRENCE M. OTTER, ESQ.
Counsel for Plaintiffs
PO BOX 575
SILVERDALE, PA 18962
267-261-2948
Email: Larryotter@hotmail.com

Dated:  November 8, 2019          __/s/ Paul A. Rossi_____
Paul A. Rossi
*Counsel for Plaintiffs*
IMPG Advocates, Inc.
316 Hill Street
Suite 1020
Mountville, PA  17554
717.681.8344
Paul-Rossi@comcast.net

## **CERTIFICATE OF SERVICE**

Plaintiffs, by and through their undersigned legal counsel, hereby certify that on this date, they have caused a true and correct copy of the foregoing document to be filed with the Clerk of the Court for the United States District Court for the District of New Jersey by using the Court's CM/ECF system.

I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished through the CM/ECF system.


Dated:  November 8, 2019                    s/ Lawrence M. Otter, Esq____
                                                        LAWRENCE M. OTTER
                                                        *Counsel to Plaintiffs*

## **WORD COUNT CERTIFICATION**

Plaintiffs, by ad through their undersigned legal counsel, hereby certifies

that the body of the foregoing document contains 2,504 words as determined by

Microsoft Word's word count function.

Dated:  November 8, 2019                         s/ LAWRENCE M. OTTER, ESQ
                                                                    Lawrence M. Otter
                                                                    *Counsel to Plaintiffs*