UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALEXANDER ARSENAULT, TRENTON POOL and ROQUE DE LA FUENTE,<br><br>    Plaintiffs,<br><br>v.<br><br>TAHESHA WAY, in her official capacity as The Secretary of State for the State of New Jersey,<br><br>    Defendant. | : Civil Action<br>:<br>: No. 16-1854-PGS-DEA<br>:<br>: DECLARATION OF<br>: ALEXANDER ARSENAULT<br>:<br>:<br>:<br>: |

## DECLARATION OF PLAINTIFF ALEXANDER ARSENAULT

I, Alexander Arsenault, pursuant to 28 U.S.C. §1746 declare under penalty of perjury as follow:

1. I am a registered voter of the Commonwealth of Massachusetts.

2. At all times during the pendency of the above captioned action, I have been and remain a registered member of the Democratic Party in the Commonwealth of Massachusetts.

3. I am a professional circulator of election petitions.

4. A professional circulator is an individual hired by a candidate who wants his/her name printed on the ballot.

5. Accordingly, a professional circulator is acting, at all times, as an agent of the candidate and the political party for whom the candidate is seeking ballot access. Professional circulators circulate election petitions at the behest of a candidate and/or the political party seeking ballot access.

6. A professional petition circulator is an individual who has chosen to collect election petitions to place the name of a candidate or a referendum question on the ballot.

Page **1** of 7

7. Professional petition circulators determine locations where a large number of individuals may be available in a short period of time and who may be qualified and willing to sign a petition circulated by the petition.

8. A professional circulator is able to quickly ask questions of strangers to determine if they are qualified and willing to sign the election petition offered by the circulator.

9. When a qualified voter indicate he/she is willing to sign the circulator's petition, the professional circulator will instruct and monitor to make sure the voter correctly execute the signature and other information required to be recorded on the petition to make sure that the signature wi; be valid upon future review.

10. I circulate election petitions on my own and on behalf of my petition circulation firm, Ballot Access Management, LLC.

11. I submit bids to candidates seeking access to the ballot in an effort to be awarded the petition drive for that candidate and then employ myself and contract other professional petition circulators to collect and file the required number of valid signatures from qualified voters on petitions promulgated by the state in order to secure ballot access for the candidate(s) for whom I am circulating election petition(s).

12. I have freely circulated election petitions in many states across the country, including California, in which I was not a resident.

13. However, as a resident of Massachusetts, my primary focus is the circulation of election petitions in the North East United States, specifically, Pennsylvania, Delaware, New Jersey, New York, Connecticut, Rhode Island, Massachusetts, Vermont, New Hampshire and Maine.



14. I am a professional circulator because I believe ballot access for candidates and referendum questions is an important component of the democratic process.

15. In 2020, I managed the circulation of election petitions for Marianne Williamson and Democratic presidential candidate Tulsi Gabbard..

16. It is my specific intention to continue to attempt to circulate election petitions for Democratic presidential candidates in New Jersey and the North East in 2024 and well beyond.

17. I have no intention to quit my profession of circulating election petitions to secure ballot access for the candidates of my choice.

18. I derive the vast majority of my income from the circulation and management of election petitions drives.

19. I have never been accused of committing any form of petition fraud.

20. Most states permit non-residents to freely circulate election petitions within their jurisdiction.

21. Some states permit non-residents to circulate election petitions only after the non-resident agrees to submit to the jurisdiction and/or subpoena power of the state in the event that there is an investigation and/or prosecution of alleged petition fraud with respect to the petitions filed by the non-resident circulator.

22. In most cases when a state requires a non-resident circulator to submit to the jurisdiction and/or subpoena power of the state for purposes of any subsequent investigation of election petitions filed by the circulator, the circulator is required to sign an affidavit or statement, under penalty of perjury, made part of the election petition, and which must be executed before the election petition may be filed with the Secretary of State, which expressly provides that the circulator agrees to submit to the jurisdiction and/or subpoena power of the



state for any subsequent investigation and/or prosecution related the election petition(s) filed by the non-resident circulator.

23. For instance the Commonwealth of Pennsylvania requires circulators of nomination papers to execute a "Statement of Circulator" at the bottom of each nomination paper which provides:

> I state that my residence is as set forth below; that the signatures to the foregoing nomination paper signed the same with full knowledge of the contents thereof; that their residences are correctly stated therein; that they all reside in the county specified below; that each signed on the date set opposite his or her name; and that to the best of my knowledge and belief, the signers are qualified electors of the electoral districts designated in this nomination paper.
>
> By signing below, I agree to submit to the jurisdiction to the jurisdiction of the Commonwealth of Pennsylvania, regarding any case or controversy arising out of my activities which circulating papers, which shall be governed by the laws of the Commonwealth of Pennsylvania.
>
> _____ County
> County of Paper Signers' Residence
>
> I, _____, state that I am the person whom I
>         Printed Name of Circulator        represent myself to be herein, and I state that the information set forth in this section is true and accurate and made subject to the criminal penalties imposed for violation of 18 Pa. C.S. § 4904 (relating to unsworn falsification to authorities).

24. Some states, such as Oregon require non-resident, and sometimes resident, circulators to register with the state's Secretary of State before they are permitted to circulate election petitions within the State.

25. Usually, registration with the Secretary of State requires the circulator to present to the Secretary of State a state issued photo identification providing evidence of the circulator's

Page 4 of 7   

legal residence where they can be served legal process in the event the election petition(s) that they file are subject to subsequent investigation.

26.   However, only a few states, such as New Jersey, do not permit non-residents to freely circulating election petitions within their jurisdiction.

27.   In order for me to either launch or participate in a candidate petition drive in New Jersey, I have to advertise for and hire New Jersey residents to work with me to collect signatures so that the New Jersey resident can execute the required affidavit attesting that the New Jersey resident and registered voter collected the signatures.

28.   Based on testimony already given in this case, it is my understanding that Defendant considers anyone who witnesses the collection of a signature is a "circulator" authorized to execute the required circulator affidavit before the petition may be filed.

29.   It is also my understanding, based on testimony already given in this case, that Defendant's interpretation of a "circulator" is not necessarily established by precedent such that a challenger to signatures collected by an out-of-state professional circulator using in-state witnesses to execute the circulator affidavit may challenge all signatures actually collected by an out-of-state circulator and merely witnessed by an in-state registered voter. Accordingly, there remains great uncertainty as to whether the use of in-state witnesses by out-of-state professional circulators will be upheld in a petition challenge filed in the New Jersey state courts.

30.   I am not aware of any professional petition circulators who reside in the State of New Jersey.

31.   I am not aware of any professional petition firms located in the State of New Jersey.

AA

32. In order to employ a New Jersey residents, I have to spend funds to advertise in newspapers, and on the internet.

33. It is my direct experience that 90% of those who respond to my advertisements to work with me, and other circulators contracted by me to complete a petition drive, do not have the skills and/or inclination to successfully work a petition drive to conclusion.

34. After someone responds to my advertisement, I have to train the individual as to the laws of the state and the requirement that they must witness the siging of each and every signatures executed on the candidate petition.

35. In most circumstances, individuals who respond to my advertisements for in-state witnesses do not want to work the number of hours that I like to work and do not want to work in the cold and/or heat necessary to collect signatures.

36. Professional circulators, such as myself, are able to collect a large number of signatures in a shorter period of time than most volunteer petition circulators because I am willing to move through crowds to interact with strangers and quickly ask them questions to determine if they are qualified to sign the candidate's petition and if they are willing to do so.

37. It is also my direct experience that most of individuals who respond to my advertisements for in-state witnesses are not willing to walk through crowds to witness the collection of signatures and would rather sit or remain in a stationary position thereby reducing their exertions, but directly hindering my ability to collect petition signatures in the most efficient manner possible.

38. It is also my direct experience, that many individuals who respond to my advertisements for in-state witnesses very often do not show up for work, which, in a state such as New Jersey, prevents me from collecting any signatures on days that the in-state witness fails

AA

to show-up for work which increases the cost of the petition drive because I have to pay to sit in a hotel until I can locate a new in-state witness who is willing to show up and do some work on the petition drive.

39. Even when an in-state witness does show up for work, they do so for a wage, which means that the cost of the petition drive, on a per-signature basis, is increased by about 50%, because the candidate has to pay twice for the same signatures, first to the professional circulator and second for the in-state witness to tag along so that they can execute the required affidavit that they witnessed the collection of each signature on the date indicated on the petition.

40. Developing in-state talent to be able to communicate and interact with strangers to sign an election petition is unreliable and frequently unsuccessful.

41. Accordingly, in-state witnesses can only be effectively utilized by serving as a witness to the signing of a petition and, thereafter, execute the required affidavit on the petition attesting that they witnessed to collection of each signature on the date indicated on the petition.

42. As a direct result of the in-state circulator requirement in New Jersey, in order to bid for a petition contract I have to add in the costs of the in-state witness expenses and inefficiencies caused by the use of in-state witnesses, which, in-turn increases the cost of the petition drive for the candidate, and might cause the candidate to avoid seeking ballot access in New Jersey and/or prevent me from being able to circulate petitions for the candidate(s) of my choosing.

**Executed on this 20th day of July, 2020**

_____
**Alexander Arsenault**