# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

ALEXANDER ARSENAULT, TRENTON POOL, and ROQUE DE LA FUENTE,

*Plaintiffs,*

v.

TAHESHA WAY, in her official capacity as the Secretary of State for the State of New Jersey,

*Defendant.*

Civil Action No. 3:16-cv-01854

**SUPERSEDING MEMORANDUM AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 56); AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 55)**

This Memorandum and Order supersedes the prior Memorandum and Order entered on April 20, 2021 (ECF No. 84). The purpose is to clarify a statement made by an employee of the Division of Elections; but otherwise the substance remains the same.

Plaintiffs bring this action under 42 U.S.C. § 1983 to challenge the validity of a New Jersey law (N.J. Stat. Ann. § 19:23-11) that requires persons circulating nominating petitions on behalf of presidential candidates in primary elections to be residents of New Jersey. Presently before the Court are the parties' renewed cross-motions for summary judgment. For the reasons that follow, Plaintiffs' motion (ECF No. 56) is granted, and Defendant's motion (ECF No. 55) is denied.

I.

## PROCEDURAL HISTORY

This case concerns a New Jersey law that allows only residents of New Jersey, who are of the same political party as a presidential candidate, to circulate a nominating petition to place

the candidate's name on the ballot in a closed primary election. *See* N.J. Stat. Ann. § 19:23-11. Plaintiffs are two circulators from Massachusetts and Texas, and one announced candidate for President of the United States, who allege that the residency requirement for nomination petition circulators violates their constitutional right to engage in core political speech, associate with voters, secure ballot access for their candidates, enact political change, and choose the most effective manner to communicate their political views. (Compl. ¶ 32). Specifically, they allege that presidential candidates who do not reside in or have an association with New Jersey encounter difficulty finding New Jersey residents to serve as witnesses to circulate and complete a nominating petition in a primary election.

Plaintiffs filed their complaint in April 2016, seeking "declaratory and injunctive relief to prevent Defendant's continued enforcement" of N.J. Stat. Ann. § 19:23-11. (Compl. 1, ECF No. 1). Plaintiffs later clarified at oral argument that their claim is an as-applied, not facial, challenge to the state law. *Wilmoth v. Sec'y of New Jersey*, 731 F. App'x 97, 101 n.5 (3d Cir. 2018).

In July 2016, then-Defendant Kim Guadagno[1] moved to dismiss the case under Fed. R. Civ. P. 12(b)(6). (Def.'s Mot. Dismiss, ECF No. 10). In defense of the state law, she argued that it passes strict scrutiny because (1) the registration requirement protects the constitutional right of political parties to associate with like-minded candidates, (*id.* at 6-9); and (2) the residency requirement allows the state to verify the political party of signature circulators, thereby protecting its strong interest in regulating the integrity of the party petition process and ballot access, (*id.* at 19). She noted that there is no known method by which the State can confirm the

---

[1] When the complaint was filed, Kim Guadagno was the Lt. Governor and Secretary of the State of New Jersey. In 2018, she was replaced as Defendant in this matter by current Secretary of State Tahesha Way. (ECF Nos. 42, 43).

party affiliation of out-of-state residents like Plaintiffs within the statutory timeframe. (*Id.* at 18).

Following oral argument, the Court dismissed the case with prejudice. (ECF No. 24). Looking at case law from the circuit courts, it concluded that the requirement to collect 1,000 signatures from registered voters of the same party as the presidential candidate, witnessed by a registered state resident, was not a severe burden to appear on the primary ballot, and that "the State's interest in protecting the associational rights of party members and the integrity of primary elections are significant goals." (Tr. of Court's Opinion 21-22, 26, ECF No. 30). It determined that the State's interest in preventing party raiding and fraudulent ballot manipulation "outweighs the adverse effect on Wilmoth and Pool," and that those plaintiffs "may still employ reasonable alternative means to assist in acquiring the appropriate number of signatures." (*Id.* at 24, 26).

The Third Circuit disagreed and vacated and remanded, finding that Plaintiffs' complaint "presents a plausible claim that the New Jersey law infringes out-of-state circulators' First Amendment rights." (Opinion 14, ECF No. 35); *Wilmoth*, 731 F. App'x at 105. After determining that strict scrutiny governed its analysis, it considered whether New Jersey's stated interests in favor of upholding the contested statute were compelling. *Wilmoth*, 731 F. App'x at 103-04. However, it was unable to reach a conclusion because the evidentiary record was insufficient to "demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." *Id.* at 104 (citing *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 646 (1994)). Specifically, because the motion to dismiss was granted, the State did not have an opportunity to present evidence supporting its

compelling interest, such as incidences of fraud or other conduct that the law was intended to prevent. *Id.*

Further, there was "no basis upon which to determine whether the New Jersey law prohibiting registered, out-of-state voters from circulating nomination petitions is narrowly tailored to protect the State's interests." *Id.* The Third Circuit noted that submitting to a state's jurisdiction is an alternative method to achieve the government's objectives; and since Wilmoth and Pool both agreed to submit to New Jersey's jurisdiction for the purpose of investigating or prosecuting petition fraud, this may be sufficient to meet the State's goals. *Id.* It emphasized that the State must show that the proposed less restrictive alternatives are less effective than its chosen means in order to survive strict scrutiny. *Id.* Because the factual record was inadequate to support such a showing, dismissal was inappropriate. *Id.* at 105.

The case proceeded to discovery before the Hon. Douglas E. Arpert, U.S.M.J. In October 2019, the parties cross-moved for summary judgment (ECF Nos. 55, 56) and, after briefing and oral argument, this Court denied both motions on May 22, 2020 (ECF No. 64). In its written order, it pointed to a lack of undisputed facts and requested that the parties further explain and develop the evidentiary record. (*Id.*) As one example, the Court noted that there was no clear definition of the term "professional circulator." (*Id.*)

Several months later, after a series of telephone conferences, the parties submitted a Supplemental Joint Stipulation of Undisputed Facts ("Joint Stipulation"), which focused primarily on the role of professional circulators and Arsenault's personal experience and knowledge as a circulator. (ECF No. 75; *see also* ECF Nos. 71, 76). Indeed, that Joint Stipulation incorporated much of what Arsenault stated in his July 2020 declaration. (*See* ECF

No. 72). The parties requested that the Court consider their cross-motions for summary judgment a second time based upon the supplemented factual record.

## RECORD

The factual record is comprised of (1) the Statements Of Undisputed Facts from the initial cross-motions for summary judgment (ECF Nos. 55-2, 57, 59-1); (2) a Supplemental Joint Statement Of Undisputed Facts dated June 29, 2020 (ECF No. 68); (3) the Declarations of Alexander Arsenault (ECF No. 72) and Lawrence Otter (ECF No. 73) dated July 23, 2020; (4) Defendant's response to the July 23, 2020 declarations dated August 3, 2020 (ECF No. 74); (5) a Supplemental Joint Stipulation Of Undisputed Facts filed on August 25, 2020 (ECF No. 75); and supplemental letters, affidavits, and exhibits submitted by the parties in response to the Court's questions from the February 17, 2021 hearing and its February 24, 2021 Judicial Notice (ECF Nos. 78, 80). For a large part, the Court incorporates the following facts from those documents.

## STATUTORY FRAMEWORK

By way of background, New Jersey recognizes only two political parties – the Republicans and Democrats – which hold primary elections to nominate candidates for the general election. (*See* Donna Barber Dep. Tr. ("Barber Dep.") 12:10-19, ECF No. 55-6).[2] Third parties, such as entities known as the Independent and Libertarian Parties, are not recognized as political parties in New Jersey, and have a separate process to place independent candidates on the ballot for a general election.[3] (Barber Dep. 12:10-24). To achieve "political party" status, a

---

[2] Donna Barber is the Supervisor of Election Administration for the New Jersey Department of State, Division of Elections. (Barber Dep. 5:18-24; Pl.'s Statement Undisputed Facts ¶ 46).

[3] Candidates for any public office may include a designation or slogan opposite their names to indicate their dedication to a particular official act or policy, or to distinguish themselves as belonging to a particular faction or wing of a political party. N.J. Stat. Ann. § 19:23-17.

party must receive ten percent of the total votes cast in an election held for all members of the General Assembly. (Barber Dep. 13:9-13); N.J. Stat. Ann. § 19:1-1.

A candidate who wishes to appear on the ballot in a primary election must be nominated by members of his or her political party through a petition. N.J. Stat. Ann. § 19:23-5; *see also* § 19:5-1. The petition must state that the signers thereof (1) reside in and are qualified voters of New Jersey; (2) are members of the candidate's political party and intend to affiliate with that party at the ensuing election; (3) indorse the person named in the petition for nomination as a presidential candidate; and (4) request that the name of the candidate be printed on the official primary ballots of their political party. N.J. Stat. Ann. § 19:23-7 (*see also* Div. of Elections Nomination Petition, Supp. Stip. of Facts Ex. B ("Nomination Petition"), ECF No. 68-2). In a statewide election, the petition must be signed by at least 1,000 such voters.[4] N.J. Stat. Ann. §§ 19:23-8; 19:25-3. Signatories must print and sign their names and provide their addresses on the nomination petition. (*See* Nomination Petition attached as Rider A).

The person who circulates a nominating petition must swear in an accompanying notarized affidavit that (1) s/he personally circulated the petition and is a member of the same political party as the candidate; and (2) s/he witnessed the voters sign the petition, and to the best of his or her knowledge, the signatories are legal voters of the State and belong to the same political party as the candidate. N.J. Stat. Ann. § 19:23-11 (*see also* Barber Dep. 33:1-2; Nomination Petition). The statute in question reads:

> Such petitions shall be verified by the oath or affirmation by affidavit of the person who circulates each petition, including a candidate who signs or circulates, or both signs and circulates, such a petition, taken and subscribed before a person qualified under the laws of New Jersey to administer an oath, to the effect that the

---

[4] State law does not require that all voters sign a single petition; rather, a candidate may present one or more petition forms as long as the aggregate number of signatures (1,000) indorse his or her nomination. N.J. Stat. Ann. § 19:23-10.

affiant personally circulated the petition; that the petition is signed by each of the signers thereof in his proper handwriting; that the signers are to the best knowledge and belief of the affiant legal voters of the State or political subdivision thereof, as the case may be, as stated in the petition, belong to the political party named in the petition; and that the petition is prepared and filed in absolute good faith for the sole purpose of indorsing the person or persons therein named, in order to secure his or their nomination or selection as stated in such petition. **The person who circulates the petition shall be a registered voter in this State whose party affiliation is of the same political party named in the petition.**

N.J. Stat. Ann. § 19:23-11 (emphasis added). Central to this case is the requirement that the

petition circulator be a registered voter in New Jersey. According to the State, this requirement

is important because

New Jersey has no ready method to verify the party affiliation of an out-of-state presidential candidate, so instead, it verifies the party affiliation of the presidential nominating petition circulator. Although New Jersey has the ability to request voter information from another state, it does not have a way to ensure the information will be forthcoming within the ten day time period between the last day to file a presidential nominating petition and the date the Secretary of State must certify the candidates.

(Def.'s Reply Br. 1, ECF No. 61; *see also* Barber Dep. 15:5 – 16:13, 40:4-25). So, the focus of

the Court's inquiry is to determine whether the residency requirement for circulators in N.J. Stat.

Ann. § 19:23-11 is an unconstitutional violation of free speech as applied to plaintiffs.

New Jersey's election laws set forth procedures designed to ensure an orderly and secure

election process. The Division of Elections ("the Division") typically makes nomination

petitions available during the December or January before the primary election, which is held in

June. (Barber Dep. 26:20-21). However, circulators may use or create any form that meets the

requirements of the State's election laws and may begin collecting signatures before the Division

distributes its form. (Barber Dep. 26:24 – 27:7). Nomination petitions must be submitted no

later than 64 days before the primary election. N.J. Stat. Ann. § 19:23-14. The Secretary of

State must then certify within 10 days the names of the candidates who shall appear on the primary ballot and their respective political parties to the county clerks. N.J. Stat. Ann. § 19:23-21.

Once the nomination petition is filed, the Division verifies the political registration of the circulators, but not each individual signatory, via the Statewide Voter Registration System (SVRS). (Barber Dep. 20:7-13); N.J. Stat. Ann. § 19:31-31. According to Supervisor Barber, signatures collected by a circulator who is not a registered voter in New Jersey will be deemed null and void by the Division and will not count toward the 1,000 signatures needed to place a presidential candidate's name on the primary election ballot. (Barber Dep. 20:14-21).

Before New Jersey implemented SVRS, circulators' registration statuses were not verified by the State but, rather, remained open to legal challenge or prosecution.[5] (Barber Dep. 32:12-20).

The nomination of a person to public office may be contested if, among other things, the nomination petition was "not filed in good faith or the affidavit annexed thereto [was] false or defective." N.J. Stat. Ann. § 19:29-1. It is a third-degree crime to commit fraud regarding the certificate of nomination or petition. N.J. Stat. Ann. § 19:34-2.

## II.

### PARTIES AND FACTS

Plaintiffs are two self-described professional petition circulators – Arsenault and Pool – and one announced presidential candidate – De La Fuente.[6] According to Plaintiffs, a

---

[5] Making a false oath, affirmation, or statement about one's registration or residency is a fourth-degree crime; indorsing a candidate from a party to which one does not belong is a fourth-degree crime. N.J. Stat. Ann. §§ 19:4-4.7; 19:34-2; 19:34-12. *See also* N.J. Stat. Ann. § 19:34-26.

[6] The original plaintiffs in the case were Plaintiffs Shawn Wilmoth (circulator), Trenton Pool (circulator), Signature Masters, Inc. (circulator firm), and Benezet Consulting LLC (circulator firm). In 2018, Plaintiffs amended their complaint to include circulator Alexander Arsenault and presidential candidate Roque De La Fuente as plaintiffs and

8

professional petition circulator is an individual who is hired by a political party candidate to collect the required number of signatures in order to secure ballot access for the candidate, and who derives the majority of his or her income from petition circulation.[7] (Decl. of Trenton Pool ¶ 9, ECF No. 80-5; ECF 75 ¶¶ 7-12). An announced presidential candidate is a candidate for the Office of President of the United States when he/she has filed a Statement of Candidacy with the Federal Election Commission. (ECF Nos. 78; 80).

Plaintiff Alexander Arsenault is a registered member of the Democratic Party in Massachusetts, where he resides. (ECF No. 75 ¶¶ 5-6). He circulates petitions primarily in the northeastern United States. (*Id.* ¶¶ 13, 16). A vast majority of his income is derived from circulating petitions and managing petition drives. (*Id.* ¶ 21). In 2020, he managed petition circulation for announced presidential candidates Marianne Williamson and Tulsi Gabbard in some states. (*Id.* ¶¶ 18, 19). However, those candidates never filed a nominating petition in New Jersey.

In order to comply with the state law in question, Arsenault alleges he will recruit and pay New Jersey residents to serve as witnesses in addition to independent contractors he retains to circulate the petition. This means candidates must pay more for each signature collected. (*Id.* ¶¶ 24-26, 33). Working together, the resident witness typically holds a clipboard and collects

---

remove Wilmoth. (ECF Nos. 42, 43). Plaintiff Trenton Pool remained. During oral argument before the Third Circuit, appellants conceded that Signature Masters, Inc. and Benezet Consulting LLC did not have interests at stake in the litigation and, therefore, their First Amendment rights need not be considered on remand. *Wilmoth*, 731 F. App'x at 100 n.3.

[7] Arsenault and Pool describe themselves and the independent contractors who they retain as "professional circulators." The use of the word "professional" is illusory in the sense that it conjures up some extraordinary education, experience, and/or a certificate of expertise on a particular subject matter issued by a reputable institution. Here, no such education, experience, or acknowledgement of expertise is alleged. Therefore, the use of the word "professional" is a self-described attribute. So, "professional circulator" is used loosely in the text. The reader should take this into consideration.

signatures while the professional circulator does the talking. (ECF No. 57 ¶ 61). Independent contractors who collect signatures for Arsenault earn between $1.50 and $10.00 per signature, and resident witnesses earn between $12 and $15 per hour. (*Id.* ¶¶ 58, 65). Arsenault charges clients approximately $2.50 more per signature if a state has a residency requirement for circulators, which covers the additional cost of paying resident witnesses and the organizational strain of managing a more cumbersome process. (*Id.* ¶¶ 59-60). That translates to an additional $2,500 for a petition that requires 1,000 signatures. Arsenault estimates he would charge approximately $15,000 to run a petition drive in New Jersey. (*Id.* at ¶ 70-71).

Further, based on his personal experience in other states, Arsenault claims that ninety percent of the people who respond to his advertisements for the position of resident witness do not have the skills or motivation to successfully complete a petition drive and, even after being trained, are not as effective or reliable as professional circulators. (ECF No. 75 ¶¶ 27-32, 34). For example, recruited residents often prefer to work fewer hours, do not want to work in cold or hot weather, prefer to sit or stand rather than walking through crowds, and frequently do not show up for work.[8] (*Id.*).

Arsenault estimates that a professional circulator typically collects between 300 and 500 signatures in one week, while a recruited resident typically collects between 200 and 300 signatures. (ECF No. 57 ¶ 66). These inefficiencies increase the cost of conducting a nomination petition drive in New Jersey which, according to Arsenault, deters presidential candidates from seeking ballot access in the State and/or prevents him from circulating petitions

---

[8] The Court does not accept this statement as true – it is a broad and unfair characterization about the work ethic of New Jersey citizens.

for the candidates of his choice. (ECF No. 75 ¶¶ 36). In the past, he has transferred the extra costs of hiring in-state residents to his clients' campaigns. (ECF No. 55-2 ¶ 71).

Plaintiff Trenton Pool, a Texas resident affiliated with the Texas Republican Party, also derives the vast majority of his income as a "professional" circulator. (ECF No 57 ¶¶ 9-12; ECF No. 80-5 ¶ 10). In 2016 and 2020 he circulated petitions for numerous candidates, including Ted Cruz, Donald Trump, Carly Fiorina, Jill Stein, and Gary Johnson. (ECF No. 80-5 ¶ 6). He intended to circulate nomination petitions in New Jersey for at least one Republican presidential candidate in 2016 but, due to the residency requirement, could not do so because he was unable to find any resident willing to serve as a witness. (ECF No 57 ¶ 13; Second Am. Compl. ¶ 21).

In 2020, Roque De La Fuente contracted Pool and his firm, Benezet Consulting, LLC, to circulate petitions to place his name on the 2020 Republican primary ballot in New Jersey. (ECF No. 80-5 ¶ 19). Because he is not a New Jersey resident and could not find any residents to serve as witnesses, Pool was unable to circulate petitions on De La Fuente's behalf. (Id. ¶¶ 21-22).

Arsenault and Pool intend to circulate nominating petitions for primary elections in the future. (Second Am. Compl. ¶ 25; ECF No. 75 ¶ 18-19). Both are willing to submit to the jurisdiction of New Jersey – for the purpose of investigating election fraud – as a condition of being permitted to circulate petitions within the state. (ECF No. 55-2 ¶¶ 7, 13). Arsenault has also provided proof of his registration with the Democratic Party in Massachusetts. (ECF No. 62-1). Neither Arsenault nor Pool have ever been accused of committing any form of petition fraud. (ECF No. 75 ¶ 22; ECF No. 80-5 ¶ 23). Both have chosen to be professional circulators because they believe ballot access is an important part of the democratic process. (ECF No. 75 ¶ 17; ECF No. 80-5 ¶ 18).

Plaintiff De La Fuente, a California resident, was an announced presidential candidate for the 2016 Democratic Party nomination; however, he appeared on New Jersey's 2016 general election ballot as an independent candidate with a slogan of the American Delta Party, not the Democratic Party. (ECF No. 57 ¶¶ 15-17; ECF No. 80; FEC Form 1, ECF No. 80-1). He was also an independent presidential candidate in the 2016 and 2020 general elections. (ECF No. 57 ¶¶ 16-17; ECF No 80). In 2017, De La Fuente became a registered member of the Republican Party and intended to employ Arsenault, Pool, and other circulators to circulate nomination petitions on his behalf for the 2020 Republican presidential primary election. (ECF No. 57 ¶¶ 18, 20). He was an announced candidate for the 2020 Republican Party presidential nomination, but he did not submit a nominating petition to run as a Republican presidential candidate in the 2020 New Jersey primary election. (*Id.* ¶ 19; ECF No. 75 ¶ 1; FEC Form 2, ECF No. 80-2). He did not appear on the 2020 New Jersey presidential primary ballot because Pool – his contracted circulator – could neither circulate petitions in New Jersey himself, as a non-resident, nor find in-state registered witnesses to gather the required signatures.[9] (ECF Nos. 80; 80-5 ¶¶ 21-22).

Defendant Way is New Jersey's Secretary of State and heads the Division of Elections. (ECF No. 57 ¶¶ 21-22). As such, she is the chief election official in New Jersey. (*Id.* ¶ 23). Nominating petitions for candidates for state and federal office are filed with Way. (*Id.* ¶ 25). In the present matter, she is charged with enforcing the challenged residency requirement in N.J. Stat. Ann. § 19:23-11. (*Id.* ¶ 24).

Defendant is not aware of any instances of signature fraud related to nominating petitions in New Jersey,[10] nor is she aware of any professional petition circulator firms within the State.

---

[9] Bewilderingly, no party even suggests this outcome occurred due to lack of voter support.

[10] This is a questionable fact that I will accept as true; but instances of alleged fraud have occurred. *See, e.g.*, Matt Arco, *AG should investigate Murphy challenger for fraud after she was tossed from ballot, election official says,*

(ECF No. 55-2 ¶¶ 52-53).  Further, Defendant is not aware of any communication from either the Republican or Democratic parties indicating that they wish to limit the circulation of nomination petitions to registered party members.  (*Id.* ¶ 54).  The Board of Elections is unaware of having received any complaints about the number of signatures required to be placed on the ballot from presidential candidates seeking nomination in New Jersey's primary election.  (ECF 75 ¶ 3).

## LEGAL STANDARD

### SUMMARY JUDGMENT

A motion for summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A factual dispute is 'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020), *amended*, 979 F.3d 192 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "A factual dispute is 'material' if it 'might affect the outcome of the suit under the governing law.'"  *Id.*  "The Court must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party."  *Id.* (quoting *Anderson*, 477 U.S. at 255).

## DISCUSSION

### JURISDICTION

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.  Under 28 U.S.C. § 1331, district courts have original jurisdiction over civil actions arising under the United States Constitution; here, Plaintiffs allege the state law in question violates their First and Fourteenth

---

NJ.COM (April 14, 2021), https://www.nj.com/news/2021/04/ag-asked-to-investigate-possible-fraud-by-murphy-challenger-tossed-from-ballot.html; Rodrigo Torrejon & Sophie Nieto-Munoz, *Kanye West's presidential bid in N.J. challenged as lawyer says hundreds of signatures are invalid*, NJ.COM (Jul 29, 2020), https://www.nj.com/politics/2020/07/kanye-wests-presidential-bid-in-nj-challenged-as-lawyer-says-hundreds-of-signatures-are-invalid.html.

Amendment rights. Plaintiffs bring this suit under 42 U.S.C. § 1983, whose jurisdictional counterpart is 28 U.S.C. § 1343(a)(3). *Lynch v. Household Fin. Corp.*, 405 U.S. 538, 541, 543 (1972). Finally, venue in the District of New Jersey is proper under 28 U.S.C. § 1391(b)(1).

### STANDING

Federal courts may only adjudicate live cases or controversies. *Common Cause of Pennsylvania v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009). The "case or controversy" requirement is satisfied only where a plaintiff has Article III standing. *Id.* at 257-58. To establish standing, a plaintiff bears the burden of demonstrating that (1) s/he has suffered an actual, concrete injury; (2) the injury is "fairly traceable" to the defendant's conduct; and (3) the injury will be remedied by the relief the plaintiff seeks from the court. *Id.* at 258 (quoting *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008)).

The Court finds that both Arsenault and Pool have established standing. As an initial matter, Arsenault and Pool allege they represent announced presidential candidates. An announced candidate is one who has filed a Statement of Candidacy with the Federal Election Commission ("FEC") – this demonstrates a candidate's interest in conducting a campaign to seek election to the Office of President.[11]

Arsenault suffered an injury in fact because New Jersey's residency requirement jeopardizes his ability to circulate petitions for candidates of his choice by increasing the cost and time required to conduct petition drives. Because he makes a living from circulating petitions, the financial impact of the residency requirement is greater to the extent that it

---

[11] This raises an unresolved question regarding when standing is established. While candidates may file with the FEC two to three years before a primary election – thus indicating their intent to run a presidential campaign – many drop out before or during the months leading up to the election. Therefore, filing a Statement of Candidacy with the FEC may be somewhat aspirational in terms of establishing a prospective candidate's genuine interest in running for President of the United States. Here, there is nothing in the record that shows the candidate(s) in question were viable candidates during the months preceding the New Jersey primary election.

interferes with his ability to retain clients. Further, during oral argument on February 17, 2021, he explained that he has had difficulty finding enough local witnesses to accompany his professional circulators in New Jersey. Arsenault's alleged injury was caused by the residency requirement, and is "capable of repetition yet evading review" because he intends to circulate petitions for future New Jersey primary elections. *See Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 546 (1976). Finally, the injury is redressable by the relief requested in Plaintiffs' motion.

Similarly, Pool has demonstrated an injury in fact because it was allegedly infeasible for him to circulate a nominating petition in New Jersey due to the residency requirement. He also intended to circulate petitions for candidates in 2016 and 2020 – and was specifically hired by De La Fuente in 2020 – but was unable to do so because he is not a New Jersey resident and could not find any local witnesses. Arsenault and Pool have shown causation and redressability without demonstrating any extraordinary effort (like calling party officials, for instance) to meet the residency requirement.

De La Fuente suffered an injury in fact when he was unable to appear on the New Jersey ballot for the Republican primary election in 2020. His injury is related to Trenton Pool's inability to circulate nomination petitions on his behalf due to New Jersey's residency requirement. Because he intends to run for president in future elections, his injury would be redressable by the relief requested in Plaintiffs' motion.

### JUDICIAL SCRUTINY

The Third Circuit determined that strict scrutiny is warranted in this case because the residency requirement for circulators restricts core political speech. *Wilmoth*, 731 F. App'x at 103. As such, New Jersey bears the burden to demonstrate that its interests in upholding the

residency requirement are compelling and that N.J. Stat. Ann. § 19:23-11 is narrowly tailored to achieve those interests. *See id.*; *Burdick v. Takushi*, 504 U.S. 428, 433-34 (1992).

"[W]hen the Government defends a regulation on speech as a means to redress past harms or prevent anticipated harms, it must . . . demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." *Turner*, 512 U.S. at 664 (quoted in *Wilmoth*, 731 F. App'x at 103-04). Therefore, New Jersey must demonstrate that the integrity of the nomination process "is in genuine jeopardy and in need of the protections afforded by" the residency requirement. *See id.* at 664-65. Even if a state law is justified, the government cannot "burden substantially more speech than is necessary to further [its] legitimate interests." *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989).

### REGISTRATION AND RESIDENCY REQUIREMENT PRECEDENT

Several circuit courts have considered whether circulator residency requirements withstand strict scrutiny, although most of those cases concern either (1) challenges to laws governing initiative or referendum petitions, rather than nominating petitions, or (2) challenges to laws governing nominating petitions brought by the candidates themselves. *See Nader v. Blackwell*, 545 F.3d 459, 475-76 (6th Cir. 2008) (citing *Nader v. Brewer*, 531 F.3d 1028, 1035-36 (9th Cir. 2008); *Lerman v. Bd. of Elections*, 232 F.3d 135, 148 (2d Cir. 2000); *Krislov v. Rednour*, 226 F.3d 851, 861-62 (7th Cir. 2000)). *See also Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 314 (4th Cir. 2013); *Yes On Term Limits, Inc. v. Savage*, 550 F.3d 1023, 1028 (10th Cir. 2008); *Chandler v. City of Arvada*, 292 F.3d 1236, 1243-44 (10th Cir. 2002); *Initiative & Referendum Inst. v. Jaeger*, 241 F.3d 614, 616 (8th Cir. 2001). In all except one of those cases, the challenged residency requirements were struck down because they were not narrowly

tailored to achieve a compelling state interest. *See Judd*, 718 F.3d at 318-19; *Savage*, 550 F.3d 1023 at 1030-31; *Blackwell*, 545 F.3d at 476; *Brewer*, 531 F.3d at 1037-38; *Chandler*, 292 F.3d at 1243-44; *Lerman*, 232 F.3d at 149; *Rednour*, 226 F.3d at 865.

In *Jaeger*, the only circuit court decision that has upheld a residency requirement for circulators, the Eighth Circuit held that there were alternative means available for non-residents to communicate their views on initiative measures, and that North Dakota's interest in preventing fraud justified the law that prohibited nonresidents from collecting and verifying petition signatures. 241 F.3d at 617. Importantly, North Dakota demonstrated its compelling interest in preventing fraud by pointing to an incident in which over 17,000 signatures were invalidated due to unresolved "petition irregularities" involving two out-of-state residents. *Id.* at 616.

The Third Circuit has yet to rule on the validity of a residency requirement, but it indicated the State must present evidence of the harm that allegedly justifies the challenged provision. *Wilmoth*, 731 F. App'x at 104. *See also Benezet Consulting, LLC v. Boockvar*, 433 F. Supp. 3d 670, 689 (M.D. Pa. 2020); *Green Party of Pennsylvania v. Aichele*, 89 F. Supp. 3d 723, 740, 742 (E.D. Pa. 2015), *order aff'd*, 103 F. Supp. 3d 681 (E.D. Pa. 2015).

III.

## ANALYSIS

Because the Third Circuit determined that strict scrutiny governs our analysis of this case, New Jersey must show that (1) its interests in upholding the residency requirement are compelling, and (2) the residency requirement is narrowly tailored to advance those interests. *Wilmoth*, 731 F. App'x at 103. The State's proffered interests are preventing voter fraud, preventing party raiding, and protecting the associational rights of the political parties. (Def.'s Mot. Summ. J. at 1-2, 14).

First, states have a legitimate interest in preventing voter fraud and party raiding. *See,*
*e.g., Burson v. Freeman*, 504 U.S. 191, 199 (1992); *Rosario v. Rockefeller*, 410 U.S. 752, 761-62
(1973). Here, it is undisputed that New Jersey is unaware of any instances of fraud related to the
circulation of nominating petitions. (ECF No. 55-2 ¶¶ 52-53; ECF No. 57 ¶ 54; Barber Dep.
54:5-8).

Citing *Jaeger*, the Third Circuit emphasized the importance of evidence that supports the
necessity of the restriction in this case. *Wilmoth*, 731 F. App'x at 104. The Third Circuit
afforded New Jersey an opportunity to produce evidence of its "sufficiently compelling reasons
to uphold the constitutionality of N.J. Stat. Ann. § 19:23-11." *Id.* However, the State conceded
that no fraud was found. The Third Circuit also highlighted the need to address Plaintiffs'
argument that submitting to New Jersey's subpoena power is a less restrictive means of
accomplishing the State's goals – a solution that has been accepted by numerous circuit courts as
a more narrowly tailored alternative to circulator residency requirements. *Id.* Although the
Court acknowledges this is a more narrowly tailored alternative, the State may develop other
reasonable alternatives to the in-state residency requirement – and the State has not presented
any substantive reason to disagree. The Court believes the State Legislature or Attorney General
– as the chief law enforcement officer – may have alternative solutions that are preferable to a
judicially-imposed remedy.

Arsenault and Pool and their independent circulators are willing to submit to the State's
subpoena power and show proof of voting registration by providing an affidavit or state record,
which would allow New Jersey to confirm they are members of the same party as the candidate

for whom they are collecting signatures.[12]  Yet New Jersey has not demonstrated such measures would be inadequate to serve its interests.  Arguably, if circulators demonstrate proof of voter registration, the need to confirm party affiliation in SVRS becomes less significant and, likewise, the need to be a state resident.  And if the circulators submit to New Jersey's subpoena power, it is more likely that residents and nonresidents alike can be investigated for alleged fraud.  Since Plaintiffs are willing to do both of those things, and the State has failed to counter this argument, it is ambiguous what additional purpose the residency requirement serves.

Admittedly, in looking at the facts, this Court finds that the residency requirement's burden on political speech is not severe.  In New Jersey, a candidate must collect merely 1,000 signatures to appear on the primary election ballot, and thus needs fewer resources compared to states with a greater signature requirement.  As such, the modest increased cost of running a petition drive in New Jersey (at most $5,000) may be insignificant to the frontrunners in the context of the total cost of an election campaign.  However, the residency requirement tends to harm out-of-state circulators and lesser-known candidates who are unable to gather the requisite signatures if they cannot locate enough residents willing to serve as witnesses.

The State's third asserted interest is to protect the associational rights of its political parties.  However, the State has not asserted any facts to support the argument that associational rights have been infringed.  Indeed, an employee of the Division of Elections stated that the political parties have not expressed any opposition to the Plaintiff's position. (ECF No. 55-2 ¶ 54; ECF No. 57 ¶ 55).

---

[12] To be clear, Arsenault and Pool suggest submitting to the State's subpoena power to the extent that they wish to personally circulate petitions in New Jersey.  Each of their out-of-state employees or independent contractors may also submit to New Jersey's law enforcement requirements if they intend to circulate petitions in the State.

Overall, New Jersey has neither produced evidence of the problems that the residency requirement purports to address, nor meaningfully refuted the less restrictive alternative methods Plaintiffs proposed. Therefore, in accordance with the Third Circuit's rationale, N.J. Stat. Ann. § 19:23-11's residency requirement does not survive strict scrutiny because it is "substantially broader than necessary to achieve the government's interest," at least with respect to the Plaintiffs in this case. *Ward*, 491 U.S. at 800. As previously noted, the Court shall not rule on the suitability of Plaintiffs' proposed alternatives because the Legislature or Attorney General are best positioned to review this decision against the statutory scheme and decide which strategies will ensure the integrity of the nominating petition process in a less restrictive manner than a circulator residency requirement.

## CONCLUSION

The Court finds that the residency requirement in N.J. Stat. Ann. § 19:23-11 is unnecessarily restrictive and does not survive strict scrutiny. This ruling on the validity of the residency requirement does not affect the remainder of the provisions of that statute.

While Plaintiffs have proposed alternative means by which the State can achieve its compelling interests, the State has discretion to craft other procedures that are less restrictive than the in-state residency requirement for circulators. Any such measures should be communicated to the parties on or before December 1, 2021.

## ORDER

**THIS MATTER** having come before the Court on motions for summary judgment filed by Defendant Tahesha Way (ECF No. 55), and Plaintiffs Alexander Arsenault, Trenton Pool, and Roque De La Fuente (ECF No. 56); and the Court having carefully reviewed and taken into

consideration the submissions of the parties, as well as the arguments and exhibits therein presented; and for good cause shown; and for all of the foregoing reasons,

**IT IS** on this 17th day of May 2021,

**ORDERED** that the Memorandum and Order entered on April 20, 2021 (ECF No. 84) is **VACATED**; and this Memorandum and Order supersedes it; and it is further

**ORDERED** that Defendant's motion for summary judgment (ECF No. 55) is **DENIED**; and it is further

**ORDERED** that Plaintiffs' motion for summary judgment (ECF No. 56) is **GRANTED**; and it is further

**ORDERED** that New Jersey statute (N.J. Stat. Ann. § 19:23-11) is declared unconstitutional in part regarding the residency requirement for nominating petition circulators; and it is further

**ORDERED** that the Division of Elections shall provide to Plaintiffs by December 1, 2021 its determination of a more narrowly tailored procedure to comport with this ruling.

_____
PETER G. SHERIDAN, U.S.D.J.